**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 91-8554**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**SCOTT LEE YOUNG,**

**Defendant-Appellant.**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

_____

**No. 91-8555**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**DONALD CHARLES ALLMAN,**

**Defendant-Appellant.**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

_____

**No. 91-8556**

_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**MICHAEL ALLEN CROW,**

**Defendant-Appellant.**

_____

Appeals from the United States District Court
for the Western District of Texas

_____

(December 28, 1992)

Before JONES, BARKSDALE, Circuit Judges, and JUSTICE, District

Judge.[1]

BARKSDALE, Circuit Judge:

Scott Lee Young, and Donald Charles Allman pleaded guilty to conspiring to possess methamphetamine and amphetamine with intent to distribute. Allman also pleaded guilty to possessing amphetamine with intent to distribute. Michael Allen Crow pleaded guilty only to possessing amphetamine with intent to distribute. Their presentence reports (PSR) recommended that they be accountable for the distribution of several kilograms of methamphetamine -- Young, 7.8; Crow and Allman, 3.41 and 3.46 respectively. Subsequent to a sentencing hearing, the district court concluded that the information in the PSRs was reliable, but found each defendant accountable for only roughly half the amount of methamphetamine recommended by the PSR. Finding no reversible error, we **AFFIRM.**

                                 I.

On August 4, 1990, the Waco police executed a search warrant at a trailer, which was the residence of Allman and Crow. Probable cause for the search was based on surveillance of the trailer, as well as information received by the police that Allman, Young, and others were dealing amphetamine and/or methamphetamine out of it. The search uncovered 1.01 grams of amphetamine, baggies, scoops, triple-beam scales, what appeared to be ledger books reflecting narcotics transactions, and other notes and papers. Crow was

---

    [1]    District Judge of the Eastern District of Texas, sitting by designation.

arrested and charged with possession of amphetamine[2]; he was released two days later. Allman and Young remained at large.

Subsequent to the August 4 search, officers continued to receive information regarding the distribution of methamphetamine and/or amphetamine by Young, Allman, and Crow. Specifically, they were told that on January 20, 1991, Young and Allman would be returning to Waco, Texas, from Fort Worth via I-35 with methamphetamine and/or amphetamine; their vehicle was described as a white Chevrolet Monte Carlo, Texas License number 148LMW. Based upon this information, the Waco police established surveillance along the interstate. When the officers spotted the vehicle on January 20, they followed it as it exited the highway for a brief stop at an unknown residence, and then continued to a convenience store. The officers approached the men outside the store; Young attempted to flee, but was apprehended; Allman was also apprehended.

The officers' search of Allman uncovered a baby food jar containing methamphetamine. The officers also searched the surrounding area where they had observed Young dropping objects from his pockets as he fled. This search uncovered several plastic bags containing methamphetamine, and a baby food jar containing methamphetamine. The vehicle was inventoried, and more containers of methamphetamine, methamphetamine oil, and other paraphernalia were recovered. The total amount of methamphetamine seized from Young and Allman on January 20 was 64.05 grams.

Crow, Young, and Allman were indicted for conspiring to possess

---

[2] During the execution of the search, Allman escaped.

methamphetamine and amphetamine with intent to distribute (Count 1); Allman was also charged with possessing amphetamine with intent to distribute (Count 2). Young and Allman pleaded guilty as charged. Pursuant to a plea bargain, Crow pleaded guilty to a superseding information, charging him only with possessing amphetamine with intent to distribute.

The PSRs recommended that Crow and Allman be held accountable for 3.41 and 3.46 kilograms of methamphetamine respectively; Young, 7.8 kilograms of methamphetamine. These amounts were based on confidential informant (CI) information, which indicated that Young transported at least 6 ounces of methamphetamine two times per week (total 12 ounces per week) for four months prior to his January 1991 arrest. According to the CI, Crow and Allman each received from Young no less than six ounces of methamphetamine per week, which they packaged and distributed in Waco.

In September 1991, the district court conducted a sentencing hearing, in which the government presented its CI information through the testimony of two narcotics agents as well as corroborating evidence. At the conclusion of the hearing, the court determined that the CI information was reliable and therefore accepted the amounts set forth in the PSRs. However, based upon a concern for potential exaggeration, the court halved the amounts for each defendant, resulting in a guideline sentencing range for Young of 135-168 months; for Crow, 151-188 months; and for Allman, 108-135 months. The sentences included imprisonment of 160 months for Young, 170 for Crow, and 120 for Allman.

II.

A.

Young contends that the district court abused its discretion in denying his request to withdraw his guilty plea. There is no absolute right to do so. *United States v. Badger*, 925 F.2d 101, 103 (5th Cir. 1991). Fed. R. Crim. P. 32(d) conditions the right to so withdraw before sentencing upon the showing of "any fair and just reason". But, we reverse a denial of the motion "only for abuse of discretion". *Id.* at 103.

Young reasserts that the prosecutor misled him into believing that he would only receive a 77 to 96 month sentence, based on the consideration of 64 grams of methamphetamine, and therefore his plea was involuntary. On the day of his sentencing hearing, Young asked to withdraw his plea, stating in support that the prosecutor misinformed him as to its consequences. The court denied the request on the basis of Young's express understanding in open court at the time of his plea that his guideline range could not be predicted, that it was "directly related to the amount [of controlled substance] involved".[3]

"For a plea to be knowing and voluntary, `the defendant must be advised of and understand the consequences of the [guilty] plea,'" *United States v. Gaitan*, 954 F.2d 1005, 1011 (5th Cir. 1992) (quoting *United States v. Pearson*, 910 F.2d 221, 223 (5th Cir.

---

[3] At the plea hearing, the court advised Young, *inter alia*, that his sentence under the guidelines could not be predicted, that "the amount of controlled substance involved has a direct bearing." Young stated that he understood this.

1990), *cert. denied*, ___ U.S. ___, 111 S. Ct. 977 (1991)).  This includes knowing "the maximum prison term and fine for the offense charged".  *Id*. at 1012 (quoting *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990)).[4]

Young was fully aware of his potential prison term and fine. Prior to accepting the plea, the court informed Young that each count carried a maximum of 20 years imprisonment, three years of supervised release, and up to a $1,000,000 fine.  He received a sentence of thirteen years and four months, three years supervised release, and a $2,000 fine.  Accordingly, we conclude  that he was aware of the consequences of his plea and, therefore, reject his voluntariness contention.  *See Gaitan*, 954 F.2d at 1012.[5]

Although the district court disposed of Young's motion on the voluntariness issue, its ruling is buttressed by other relevant factors.[6]  Young did not assert his innocence, nor did he express

_____

[4]  This court stated in *Rivera*, 898 F.2d at 447, that "[a]s long as the [defendant] `understood the length of time he might possibly receive, he was fully aware of his plea's consequences'".

[5]  Of course, we also take note of the fact that Young stated in open court at his plea hearing (1) that his plea was voluntary; (2) that he was not forced, threatened, or coerced, in any way, into pleading guilty; (3) that, as discussed, he understood that his punishment range could not be accurately predicted because the amount of drugs involved was a matter in dispute; and (4) that he had not received any prediction, prophesy, or promise as to the terms of his sentence.  "The defendant's declaration in open court that his plea is not the product of threats or coercion carries a strong presumption of veracity." *United States v. Clark*, 931 F.2d 292, 295 (5th Cir. 1991) (quoting *United States v. Darling*, 766 F.2d 1095 (7th Cir.), *cert. denied*, 474 U.S. 1024 (1985)).  Young does not rebut this presumption.

[6]  Seven factors set forth in *United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984), *cert. denied*, 471 U.S. 1004 (1985), guide the district court's disposition of a motion for withdrawal:

dissatisfaction with his attorney.  He delayed filing his motion until the day of sentencing, three months after his plea.  "The burden of establishing a fair and just reason for withdrawing a guilty plea remains at all times on the defendant."  *Badger*, 925 F.2d at 104.  Young has failed to meet his burden; the district court did not abuse its discretion in denying the motion.

### B.

Appellants contend that the district court erred in the calculation of their sentences by relying on uncorroborated double and triple hearsay statements derived from CIs.  They object particularly to reliance on CI #1, who reported to officer Moore that Young transported approximately 12 ounces of methamphetamine and/or amphetamine per week over a period of four to five months and distributed two to three baby food jars of the substance, each containing approximately one ounce, to Crow and Allman.  The probation officer and district court relied on the statements of CI #1 as reported through Moore.

"A district court's findings about the quantity of drugs implicated by the crime are factual findings reviewed under the `clearly erroneous' standard."  *United States v. Rivera*, 898 F.2d

---

(1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the Government; (3) whether the defendant delayed in filing the motion and, if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether adequate assistance of counsel was available to the defendant; (6) whether his plea was knowing and voluntary; and (7) whether withdrawal would waste judicial resources.

442, 445 (5th Cir. 1990).[7]  In our review, we take into account the district court's "wide discretion in the kind and source of information [it] considers in imposing sentence".  **United States v. Garcia**, 693 F.2d 412, 416 (5th Cir. 1982).   For sentencing purposes, the district court may consider any relevant evidence "without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."  U.S.S.G. § 6A1.3.  Obviously, the district court has significant discretion in evaluating reliability.  **United States v. Kinder**, 946 F.2d 362, 366 (5th Cir. 1991), *cert. denied*, ___ U.S. ___, 112 S. Ct. 1677 (1992).

When calculating the quantity of drugs upon which to base a sentence, "[q]uantities of drugs, not specified in the indictment, if part of the same scheme, course of conduct, or plan,  may be used to determine the base offense level".  **United States v. Montes**, 976 F.2d 235, 240 (5th Cir. 1992) (citing U.S.S.G. § 1B1.3).  "In making this determination, the district court may rely on the information presented in the presentence investigation report so long as the information has `some minimum indicium of reliability' ....   The defendant bears the burden of demonstrating

---

[7]  We adhere, of course, to the limitations set forth in **Anderson v. City of Bessemer City**, 470 U.S. 564, 565 (1985):

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

that information the district court relied on in sentencing is `materially untrue.'" ***United States v. Vela***, 927 F.2d 197, 201 (5th Cir.) (internal quotations omitted), *cert. denied*, ___ U.S. ___, 112 S. Ct. 214 (1991).

At the sentencing hearing, two officers testified about their lengthy investigation of appellants, and the CI statements. They vouched for the reliability of the CIs, stating that each had been instrumental in obtaining convictions in the past, and that the CIs reported drug dealing on the part of all three appellants in conjunction with one another.[8]

The officers corroborated the CI statements with evidence obtained from their own investigation. Officer Herwald arranged "buys", which involved the sale of amphetamine by Crow to an informant. Tips from CIs resulted in the August 4 search of the trailer, during which Crow was arrested and Allman escaped. From this search, the officers recovered amphetamine, drug

---

[8] The information provided by CI #1 is stated *supra*.

CI #2 provided information prior to the August 4 search. He stated that Crow sold methamphetamine or amphetamine daily, and that Crow was said to have boasted that he earned $300 in 30 minutes. He estimated that Crow sold about one ounce in a week's time.

CI #3 stated that he witnessed Crow sell one ounce of methamphetamine or amphetamine out of the trailer prior to the August 4 search and that Crow was obtaining his amphetamine or methamphetamine from Young or Allman.

CI #4 provided the same information as CI #1, except #4 did not specify amounts.

CIs #5 and #6 stated, prior to the August 4 search of the trailer, that Young and Allman were dealing narcotics out of the trailer.

- 9 -

paraphernalia, including bags, scales, and scoops, and they also recovered ledgers and other notations that indicated drug dealing. Information from CI #1 and CI #4 resulted in the January 20 seizure of Allman and Young. Informants accurately described the car, the license plate, the route, and the fact that the men would be transporting drugs in baby jars. The evidence obtained from the January 20 seizure provided further indication of drug dealing; they recovered baby jars of methamphetamine, filters, a knife and clothing that both contained an odor related to methamphetamine manufacturing, and miscellaneous paraphernalia.

The court gave each appellant the opportunity to present rebuttal evidence; only Crow did so. He tangentially attempted to rebut the officers' testimony regarding the amount of drugs at issue by presenting witnesses who testified to his financial situation and work experience, and introduced into evidence an exculpatory letter written by Young.

The district court carefully evaluated the testimony and other evidence and determined that the information that provided the basis for the PSR recommendations was reliable.[9] Accordingly, the district court, like the probation officer, based his sentencing determination concerning amounts on the statements by CI #1. However, taking into account uncertainty and the possibility of

---

[9] It stated that "the information from the [CIs] ... concerning the transportation of controlled substances from Fort Worth to Waco is certainly corroborated by the other informants, by the physical evidence, [and] by [] all aspects of the lengthy investigation engaged in by the Police Department in this case and is sufficiently reliable."

exaggeration, he found appellants responsible for the transportation of only ten ounces, twice a week for four months, and, in addition, he halved that amount. This finding is not clearly erroneous.

C.

1.

Appellants contend, on two bases, that it was error for the court to rely on information from CIs; first, because the government failed to establish good cause for their nondisclosure. They refer to the commentary to U.S.S.G. § 6A1.3 (quoting *United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978)), which provides that "[o]ut-of-court declarations by an unidentified informant may be considered `where there is good cause for the nondisclosure of his identity and there is sufficient corroboration by other means.'" In addition, Crow contends that the district court erred in summarily overruling his attempt to show the inapplicability of the government's withholding disclosure and in denying his pre-plea motions for discovery and inspection.

Although clearly on notice through the PSRs that the government was relying on CIs, appellants did not object to the government's failure to show good cause for nondisclosure. Only Crow made an attempt to discover their identities. He submitted a disclosure request in April 1991 as part of a motion for discovery and inspection, but his guilty plea in June 1991 rendered this pre-trial motion moot. *See* Fed. R. Crim. P. 12(f); *Barrientos v. United States*, 668 F.2d 838, 842 (5th Cir. 1982). He did not renew

his request at the Rule 11 hearing held in June; he did not request

disclosure in his objections to the PSR filed in July 1991; and he

did not submit a request to the district court in the two month

interim between the filing of his PSR objections and his sentencing

hearing in September.[10]  It was only after the government had begun

_____

[10]  Crow also had the opportunity to object to nondisclosure at
the beginning of the sentencing hearing.  Before the government
proceeded with its first witness, the following exchange occurred:

> THE COURT:  I believe there are objections that might apply
> to each of these Defendants, particularly the amount of
> controlled substance that would constitute the appropriate
> relevant conduct.  So I think it might save us all time if
> we heard the evidence together and would suggest that the
> Government  present  whatever  witnesses  it  desires  to
> confront any objections that have been filed.  And then
> we'll  allow  all  three  attorneys  to  cross-examine  the
> witnesses to the extent they wish.

> MR.  FRAZIER:   Yes, sir, Judge.  We're ready to proceed.

> * * *

> THE COURT:  So  we'll  have  a  clear  understanding, what
> common objections do we have, Mr. Frazier, --

> MR.  FRAZIER:   Your Honor, --

> THE COURT:   ... We -- we are concerned with the amount of
> controlled  substance  that  would  constitute  relevant
> conduct.  Are there other matters that are common or -- or
> that we would have witnesses testifying about?

> MR. FRAZIER [United States Attorney]:   The only -- the
> only witnesses the Government has prepared to present are
> on the offense level.  There are other objections, but I
> don't believe there are any that cross the same lines as to
> each  three,  and  they're  legal  objections  as  to  the
> Guidelines only, --

> THE COURT:  All right.

> MR.  FRAZIER:    -- I think.  Is that correct, Counsel?

> MR. MOODY [Allman's counsel]: Your   Honor, I have an
> objection to the failure to grant the two point reduction

- 12 -

to present testimony that Crow objected and asked that the identities of the CIs be disclosed and that they be brought to the courtroom for cross-examination. (Even then, he based his objection only on the claim that the CIs lost their confidential status by sharing information with persons other than the officers, not on the government failing to show good cause for nondisclosure; as discussed in note 12, *infra*, he discussed § 6A1.3 in closing argument, but did not contend that any burden of proof was on the government.)  At that point, it was simply too late in the day to expect the district court to seriously consider his request.

Appellants contend, however, that the burden was on the government to show good cause for nondisclosure, and that, therefore, they were not required to object to the government's claimed failure to do so.  Even assuming, without deciding, that the government did have such a burden, appellants were still required, of course, to timely object in order to preserve this issue for appeal. ***United States v. Vontsteen***, 950 F.2d 1086, 1089-

---

for acceptance of responsibility.   Otherwise, the only objection --

THE COURT:   Sure.

MR. MOODY:   --  we have is to the  amount of the --

THE COURT:   But as far as the witnesses, we're going to be dealing with the relevant conduct --

MR. MOODY:   -- controlled substance.

THE COURT:   -- and the amount involved?

MR. MOODY:   That's all.

90 (5th Cir. 1992) (en banc).  Accordingly, we review only for plain error.  *See* **United States v. Lopez**, 923 F.2d 47, 50 (5th Cir.), *cert. denied*, ___ U.S. ___, 111 S. Ct. 2032 (1991).

"Plain error" is error "so obvious and substantial that failure to notice and correct it would affect the fairness, integrity or public reputation of [the] judicial proceedings." **Id.**  We will not find plain error in the failure to adequately justify nondisclosure of CIs unless it is clear from the record that this rendered the sentencing process wholly unreliable.

Here, the officers testified in support of the reliability of the CIs.  The defendants were given the opportunity to cross-examine these officers and present evidence of their own regarding the falsity of the information conveyed by the CIs.  In addition, the government corroborated the CIs' statements.  Therefore, we conclude that the refusal to disclose the identity of the CIs did not render the sentencing process wholly unreliable and therefore do not find plain error.

Appellants also contend that the reliance on the statements of unidentified CIs denied them both their right to confront witnesses and due process. Again, they did not object to the evidence on constitutional grounds; however, even if properly raised in the district court, these contentions have no merit.[11]

Hearsay is admissible for sentencing purposes, including corroborated out-of-court statements by unidentified CIs, and thus its admission does not violate due process or the right to confrontation. At sentencing, due process merely requires that information relied on in determining an appropriate sentence have "some minimal indicium of reliability" and "bear some rational relationship to the decision to impose a particular sentence." *United States v. Galvan*, 949 F.2d 777, 784 (5th Cir. 1991). We held, *supra*, that those requirements are met.

Concerning the right to confrontation, it is more than well-established that, "a defendant's confrontation rights at a sentencing hearing are severely restricted." *United States v. Rodriguez*, 897 F.2d 1324, 1328 (5th Cir.), *cert. denied*, ___ U.S.

---

[11] As stated, Allman and Young did not object to the nondisclosure. And, as noted, Crow's primary objection at the sentencing hearing was based on his unsupported assertion that the government's informants may have waived their right to remain confidential by discussing their testimony with others. Shortly before the close of the government's presentation, Crow presented a second "theory"; he asked the court to compare, *in camera*, his list of informants with the government's list. In closing argument, Crow, for the first time, cited U.S.S.G. § 6A1.3 and argued that the court's reliance on confidential informants is "beyond the ... contemplation by the sentencing commission." He did not once object that nondisclosure violated his right to confrontation or due process.

___, 111 S. Ct. 158 (1990).  All three defendants were notified as to the information the government intended to present regarding their involvement in a drug conspiracy.  The court allowed the defendants to put on a defense as well as the opportunity to cross-examine the officers who investigated their case and the probation officer who prepared their reports.  Appellants' confrontation rights were not denied.  *See* **United States v. Byrd**, 898 F.2d 450, 453 (5th Cir. 1990); **United States v. Marshall**, 910 F.2d 1241, 1244 (5th Cir. 1990), *cert. denied*, ___ U.S. ___, 111 S. Ct. 976 (1991).

D.

Appellants next object to the use of methamphetamine in calculating their base offense level.  They point out that none of the informants, including CI #1, specified whether the drugs distributed were amphetamine or methamphetamine, and that the officers seized both amphetamine and methamphetamine.  They contend that the district court erred in resolving this uncertainty in favor of methamphetamine, a substance that results in significantly higher penalties (approximately double) under the guidelines.

None of the appellants objected to the use of methamphetamine, as opposed to amphetamine, in calculating their base offense level.[12]  We therefore, again, review only for plain error.

_____

[12] The objections filed by Allman, Young, and Crow to their PSRs  focused on the inclusion of additional methamphetamine as relevant conduct.  They stated that, given the speculative nature of the evidence, they should only be held responsible for the 64.05 grams of methamphetamine seized on January 20.  They did not object to the probation officer's use of methamphetamine as opposed to amphetamine.  (Although Crow's PSR objections may raise this issue, they fail to do so expressly.)  At the beginning of the sentencing hearing, the court, for the express purpose of obtaining a "clear

"Questions of fact capable of resolution by the district court upon proper objection at sentencing can never constitute plain error." *United States v. Lopez*, 923 F.2d 47, 50 (5th Cir. 1991).  The determination that appellants were involved in the distribution of over 2,240 grams of methamphetamine is factual.[13]  Accordingly, we do not find plain error.

E.

Crow, in objections filed to his PSR and at sentencing, objected to the use of methamphetamine in calculating his base offense level on the grounds that he is charged only with possession of amphetamine, and there is no evidence indicating that he was aware of any activities involving methamphetamine.

Crow was initially charged with conspiring to distribute methamphetamine and amphetamine with intent to distribute.  Pursuant to a plea bargain, he pleaded guilty to a superseding information charging him only with possession of amphetamine with intent to distribute.  Nonetheless, at sentencing, the court held Crow accountable for the distribution of over one kilogram of

---

understanding" of common objections before the court, stated for counsel its understanding that appellants were concerned with "the *amount* of controlled substance that would constitute relevant conduct".  (Emphasis added.)  *See supra* note 11.  Counsel again failed to object to the use of methamphetamine as opposed to amphetamine, nor did they object during the course of the sentencing hearing.

[13]  Appellants assert that the question is legal.  We disagree.  The district court did not make the factual determination that it was uncertain as to the type of drug distributed, and then resolve its uncertainty in favor of the stiffer sentence.  Rather, we can infer from the record that the court determined that the substance distributed on a large scale was methamphetamine.

methamphetamine based on its factual determination that Crow was actively involved in a conspiracy with Allman and Young to distribute it.

When determining the base offense level for drug distribution, a court may, of course, consider relevant conduct of which the defendant has not been charged, or convicted. *Byrd*, 898 F.2d at 452. Similarly, counts to which the defendant does not plea may be relevant conduct. *Id.* In the context of a drug distribution case, relevant conduct includes additional quantities and *types* not specified in the count of conviction if part of the same course of conduct, plan, or scheme as the count of conviction.[14]

Accordingly, our sole inquiry with respect to this contention is whether the district court clearly erred in finding that the distribution of methamphetamine by Allman and Young was part of the same course of conduct, common scheme, or plan, as the conduct underlying Crow's conviction for possession of amphetamine with intent to distribute. *See* *Byrd*, 898 F.2d at 452 (stating that the determination of whether certain drugs are relevant is reviewed for clear error). We conclude that this factual determination is not clearly erroneous, even though officers did not personally observe Crow in possession of methamphetamine.

---

[14] The current commentary to the guidelines states,

> [I]n a drug distribution case, quantities and *types* of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction.

U.S.S.G. § 1B1.3 (emphasis added).

As discussed, *supra*, a number of CIs independently linked Crow with drug distribution involving Young and Allman.[15] The officers vouched for the CIs' reliability and, as stated, their statements were sufficiently corroborated, which provides further assurance of reliability. There is also circumstantial evidence linking Crow with Allman and Young's distribution scheme.[16] Crow did little to rebut the statements in the PSR regarding his involvement with Young and Allman. He presented an affidavit from Young that denied Crow's involvement in the conspiracy; however, the veracity of this affidavit was called into question by statements of Allman to the probation officer regarding his involvement with Crow.[17] Accordingly, we do not find clear error.

III.

For the foregoing reasons, the judgments of the district court are

**AFFIRMED.**

JUSTICE, District Judge, dissenting.

I dissent from the result reached by the majority. Moreover, I differ with the majority's analysis of whether resentencing is

---

[15] *See supra*, note 8.

[16] For example, Allman was present at Crow's residence at the time of the August 4 raid, which resulted in the seizure of amphetamine, drug paraphernalia, and other evidence of the distribution of illicit substances. Also, Officer Moore testified that, on January 21, he observed what he believed to be Crow's car at an unknown residence where he had observed Allman and Young briefly stop while transporting methamphetamine the day before (January 20). Moore testified that they had a suspicion that Crow was staying at this residence; CIs reported that Crow had moved there after the search of his trailer.

[17] Allman stated, "We (Young, Crow, and I) sold some dope to make our money back for the purchase of same."

required where the government failed to establish good cause for the non-disclosure of the identity of confidential informants.

**1. Good Cause Showing for Nondisclosure of Identity of Confidential Informants**

The United States Sentencing Guidelines (U.S.S.G.) require a good-cause showing before the district court considers out-of-court declarations by confidential informants:

> In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. 18 U.S.C. §3661. Any information may be considered, so long as it has "sufficient indicia of reliability to support its probable accuracy." (citations omitted) Reliable hearsay evidence may be considered. Out-of-court declarations by an unidentified informant may be considered "where there is good cause for the nondisclosure of his identity and there is sufficient corroboration by other means." United States v. Fatico, 579 F.2d 707, 713 (2d Cir. 1978). Unreliable allegations shall not be considered. United States v. Weston, 448 F.2d 626, 634 (9th Cir. 1971).

U.S.S.G. §6A1.3 (Commentary) (emphasis added). See also United States v. Cuellar-Flores, 891 F.2d 92, 93 (5th Cir. 1989).

U.S.S.G. §6A1.3 incorporated pre-guidelines case law requiring (1) good cause for not disclosing the identity of an informant, and (2) corroboration by other means of information furnished by an undisclosed informant, before this informant's out-of-court declarations can be used in sentencing. See United States v. Fatico, 579 F.2d 707, 708-709 (2d Cir. 1978), cert. denied, 444 U.S. 1073 (1980).

In Fatico, a pre-sentencing guidelines case incorporated in the comments to §6A1.3, the Second Circuit stated: "We hold . . . that Due Process [and the Confrontation Clause] [do] not prevent use in sentencing of out-of-court declarations by an unidentified informant where there is good cause for the nondisclosure of his identity and there is sufficient corroboration by other means." Fatico, 579 F.2d at 713 (emphasis added). In Fatico, "the district

court . . . recognized that the Government cannot and will not reveal informer's identities because of past murders of informants who implicated organized crime members." Id. at 710. The hearsay also had independent corroboration by testimony of two co-conspirators. Id. See also United States v. Weston, 448 F.2d 626, 634 (9th Cir. 1971), cert. denied, 404 U.S. 1061 (1972) (cited in U.S.S.G. §6A1.3 commentary) (where sentencing court relied on statements of narcotics agents' which were supported, in part, by a confidential informant's report, court remanded for resentencing, since due process infringed unless statements of confidential informants "amplified by information such as to be persuasive of the validity of the charge there made"); Gardner v. Florida, 430 U.S. 349, 362 (1976) (in the context of capital case, vacating and remanding where death sentence was based on secret information in presentence investigation report, which defendant could neither deny nor explain).

**2.    Misapplication of Federal Sentencing Guidelines**

Pursuant to 18 U.S.C. §3742(f)(1), if the Court of Appeals determines that the sentence:

> (1) was imposed in violation of law <u>or imposed as a result of an incorrect application of the sentencing guidelines</u>, the court <u>shall</u> remand the case for further sentencing proceedings with such instructions as the court considers appropriate . . . .

(1989 Supp.) (emphasis added).

Under U.S.S.G. §6A1.3 (Commentary), out-of-court declarations by an unidentified informant may be considered only "where there is good cause for the nondisclosure of his identity and there is sufficient corroboration by other means." Fatico, 579 F.2d 707, 713 (2d Cir. 1978).

- 21 -

It is questionable whether appellants adequately preserved for appeal their contention that it was error for the district court to rely on information from confidential informants without a "good cause" showing for nondisclosure of their identities. However, even assuming that appellants did not preserve their contention for appeal, misapplication of U.S.S.G. §6A1.3 (Commentary) constitutes plain error in this case. <u>Williams v. United States</u>, 112 S.Ct. 1112, 60 USLW 4206 (1991).[18]

Although the party challenging the sentence must show that the district court relied on an invalid factor at sentencing--in this case, out-of-court declarations by confidential informants for whom the government failed to make a good cause showing for non-disclosure of identity--the reviewing court must determine if the invalid factor was "determinative in the sentencing decision." <u>Williams</u>, 60 USLW at 4209.[19] "Once the Court of Appeals has decided that the district court misapplied the Guidelines, remand [under §3742(f)(1)] is appropriate unless the reviewing court concludes,

---

[18] I assume, but do not decide, that the contemporaneous objection rule applies in a case involving misapplication of the federal sentencing guidelines. The mandatory nature of the Supreme Court's language in <u>Williams</u> would indicate otherwise. In discussing the proper analysis for remand under either §3742(f)(1) or §3742(f)(2), the Court stated, "In order to give full effect to both provisions, therefore, the reviewing court is <u>obliged</u> to conduct two separate inquiries [only the first being relevant to this case]. First, was the sentence imposed either in violation of law or as a result of incorrect application of the Guidelines? If so, <u>a</u> remand <u>is</u> <u>required</u> under §3742(f)(1)." <u>Williams</u>, 60 USLW at 4209 (emphasis added).

[19] The fact that the commentary to U.S.S.G. §6A1.3 is at issue in this case does not affect the appropriate analysis as to whether a remand for resentencing is appropriate. <u>Williams</u>, 60 U.S.L.W. at 4208 ("general policy statements regarding application of the guidelines," in addition to the guideline itself, will be cause for remand, if the sentence is the result of misapplication of the guideline.)

on the record as a whole, that the error was harmless, <u>i.e.</u>, that the error did not affect the district court's selection of the sentence imposed." <u>Id</u>.; <u>United States v. Johnson</u>, 961 F.2d 1188, 1189, n.1 (5th Cir. 1992) (adopting <u>Williams</u> and overruling prior Fifth Circuit law which indicated that improper application of the sentencing guidelines would always require remand).

In this case, misapplication of the sentencing guidelines affected the district court's selection of sentence imposed, and thus remand is appropriate for plain error.

**3. Confidential Informant Information Used at Sentencing Hearing Without Good Cause Showing for Nondisclosure of Identity**

In this case, the Pre-Sentence Reports of the United States Probation Office recommended that appellants, Crow and Allman, be held accountable for 3.41 and 3.46 kilograms of methamphetamine, respectively, and Young for 7.8 kilograms of methamphetamine. These amounts were based on confidential informant information, indicating that Young transported at least six ounces of methamphetamine two times per week (total 12 ounces per week) for four months before he was arrested in January 1991. Information provided by confidential informants was also to the effect that Crow and Allman each received from Young no less than six ounces of methamphetamine per week, which they packaged and distributed in Waco.

Through the testimony of two narcotics agents at the September 1991, sentencing hearing, the government presented this confidential informant information without making a good cause showing for nondisclosure of identity. In the absence of a good cause showing, the sentencing court determined the confidential

informant information was reliable and accepted the above-stated amounts set forth in the Pre-Sentence Reports of the United States Probation Office. The judge, however, decided to halve the amounts for each defendant, worrying about potential exaggeration. The resulting guideline ranges were as follows: for Young, 135-168 months; for Crow, 151-188 months; and for Allman, 108-135 months. The sentences included imprisonment of 160 months for Young, 170 for Crow, and 120 for Allman.

## 4. Conclusion

In my opinion, plain error occurred in not requiring a good cause showing for non-disclosure of the identity of confidential informants. Under the Williams standard, remand is required here since, from the record as a whole, it cannot be conclusively determined that the district court would have imposed the same sentence, if the government had been required to, and failed to, make a "good cause" showing for nondisclosure of identity of confidential informants. See Williams, 60 USLW at 4209 ("in determining whether a remand is required under §3742(f)(1), a court of appeals must decide whether the district court would have imposed the same sentence had it not relied upon the invalid factor or factors.")

For the reasons stated above, I respectfully dissent.