IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-50764

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOE DRELL DAVIS,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Western District of Texas

_____

February 7, 1996

Before JOLLY, DUHÉ, and DENNIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Defendant-appellant Joe Drell Davis ("Davis") pleaded guilty to possession with intent to distribute crack cocaine in violation 21 U.S.C. § 841(a)(1). On appeal he challenges only his sentence, alleging that the district court erred in finding that seven ounces (198.45 grams) of crack cocaine were attributable to him. Davis challenges the sentence on two grounds. First, he questions whether the information used to calculate the quantity of cocaine he sold was grounded in sufficient indicia of reliability since it was based on a statement provided by a confidential informant who later contradicted the statement at Davis' sentencing hearing. Second, he argues that the quantity of cocaine attributed to him

should reflect the amount of cocaine he actually sold instead of the amounts he negotiated to sell. Based on our determination that the district court's finding was not clearly erroneous and that the court correctly applied the sentencing guidelines, we affirm Davis' sentence.

I

Davis was the subject of an undercover sting operation conducted by the Killeen, Texas Police Department. On July 27, 1994, while under surveillance by police officers, Davis negotiated the sale of two ounces (56.7 grams) of crack cocaine to a confidential informant, Jody Wilson ("Wilson"). Wilson actually bought slightly less than two ounces of crack cocaine (46.40 grams). He paid Davis $1,900. Davis was arrested and charged with distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1). Davis pleaded guilty as charged.

Prior to the sting operation, Wilson told the police that he had been purchasing cocaine from Davis about twice a month over the five month period prior to July 27, 1994. Wilson stated that he would purchase "two ounces every two weeks [or] sometimes I might buy one ounce a week." Wilson also said that he generally purchased crack cocaine, but also occasionally bought powder cocaine. The police relayed this information to the U.S. Probation Office.

After Davis' guilty plea, Davis' probation officer prepared a Presentence Report ("PSR") attributing seven ounces of crack

cocaine to Davis. The probation officer reached this conclusion by adding the amount of crack cocaine Davis negotiated for sale to Wilson in the sting operation (two ounces or 56.7 grams) to the amount of crack cocaine the officer estimated that Davis had sold to Wilson over the five-month period preceding the sting (five ounces or 141.75 grams). In order to generate the latter estimate, the officer assumed that Davis sold drugs to Wilson in ten separate transactions, each involving only one ounce of cocaine. The officer further estimated that only half of the ten transactions involved crack cocaine, in order to allow for Wilson's statement that "occasionally he bought powder cocaine." Using seven ounces of crack cocaine as the total amount of controlled substances involved, the PSR assigned Davis a base offense level of 34 and an imprisonment range of 151-188 months.

Wilson testified at Davis' sentencing hearing. Under oath he stated that he purchased crack cocaine from Davis on July 27, 1994, and that he knew Davis for five months. He also stated that he purchased drugs "maybe four or five times" from Davis in the preceding five months, and that the "cocaine deals ranged from a half-ounce to two ounces." Wilson also testified on direct examination that sometimes the transactions involved powder cocaine.

On cross-examination, Wilson confirmed his statement, used in the PSR, that he "would buy two ounces every two weeks, sometimes I might buy one ounce a week." When asked about the discrepancy

between his testimony and his statements to the police, Wilson explained that his earlier estimate for the PSR was "a range," and that his testimony differed because "its not something that I wrote down on a calendar." He also responded that "I told [the police that my earlier statement] was an approximation."

In sentencing Davis, the district court adopted the factual findings and guideline application in the PSR. The district court sentenced Davis to 151 months in jail, the minimum imprisonment time at the corresponding offense level. Davis now objects to the amount of crack cocaine attributed to him by the PSR and the district court and, therefore, to the base offense level and imprisonment range applicable to him.

                                II

Davis first contends that the information provided by Wilson to the police and incorporated into the PSR regarding Davis' crack sales to Wilson prior to July 27, 1994, lacks sufficient indicia of reliability to support its probable accuracy, as required under U.S.S.G 6A1.3. Davis urges that the estimates used in the PSR have no corroboration because they were based on statements by Wilson that Wilson later contradicted at the sentencing hearing. Instead, Davis argues that Wilson's testimony at the hearing is controlling and requires the district court to find that he sold no more than three ounces of crack prior to the sting, which would result in a reduction of his base level offense, and a corresponding decrease

in the imprisonment range applicable to him.[1]  The use of any amount of crack greater than three ounces lacks sufficient indicia of reliability, Davis maintains, and requires this court to find clear error on the part of the district court in sentencing him.

"A district court's findings about the quantity of drugs implicated by the crime are factual findings reviewed under the `clearly erroneous' standard." United States v. Rivera, 898 F.2d 442, 445 (5th Cir. 1990).  In our review, we take into account the district court's "wide discretion in the kind and source of information [it] considers in imposing sentence." United States v. Garcia. 693 F.2d 412, 416 (5th Cir. 1982).  Under the clearly erroneous standard, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985).

---

[1]Specifically, Davis maintains that Wilson's testimony (a) limited the total number of drug transactions between Davis and Wilson before July 27, 1994, to five transactions, and (b) established that only half of these transactions, at most three, involved crack cocaine.  Because each transaction involved between "a half-ounce [and] two ounces," Davis urges that "[t]he figure of one ounce would . . . be reasonable to use."  Plugging in the numbers that Davis asserts are reliable (five sales of cocaine consisting of one ounce each, three of which involved crack cocaine), only three ounces (or 85.05 grams) of crack may be attributed to Davis prior to July 27.  This amount, together with that in the controlled buy, equals a total of 141.05 grams, giving Davis an offense level of 32 and a sentence guideline range of 121-151 months.

A district court has wide discretion in determining which evidence to consider and which testimony to credit.  U.S. v. Edwards, 65 F.3d 430 (5th Cir. 1995).  For sentencing purposes, the district court may consider any relevant evidence "without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."  U.S.S.G. § 6A1.3; U.S. v. Michael, 894 F.2d 1457, 1461-62 (5th Cir. 1990).  Facts used by the district court for sentencing purposes have "some indicia of reliability" where they are "reasonably reliable."  U.S. v. Shacklett, 921 F.2d 580, 585 (5th Cir. 1991).  "The defendant bears the burden of demonstrating that information the district court relied on in sentencing is `materially untrue.'"  United States v. Vela, 927 F.2d 197, 201 (5th Cir. 1991).

In United States v. Young, 981 F.2d 180 (5th Cir. 1993), we found that a sentencing court's determination as to the amount of drugs involved in defendants' offenses was supported by reliable information.  We did so despite the defendants' claim that the district court improperly relied on the officers' hearsay testimony about the statements of certain confidential informants and the fact that one defendant presented evidence that tended to rebut information provided by the confidential informants.  The government provided corroboration in the form of evidence obtained from its own investigation concerning the defendants' involvement in drug dealing and the informants' past record of reliability,

without specifically corroborating the drug amounts reported by the informants. We noted in Young that, although faced only with the paucity of defendants' rebuttal testimony, the district court nevertheless halved the amount of drugs reported by the informants to "tak[e] into account uncertainty and the possibility of exaggeration." Id. at 186.

In the present case, Wilson gave conflicting testimony at the sentencing hearing as to the aggregate number of purchases he made from Davis prior to July 27. He stated on direct examination that he purchased drugs from Davis "maybe four or five times," a departure from his statement for the PSR. On cross-examination, however, he confirmed that he had purchased drugs from Davis over a five-month period in which he "would buy two ounces every two weeks, sometimes I might buy one ounce a week." He explained the conflict in his own testimony by noting that his purchases were "not something that I wrote down on a calendar."

The district court carefully evaluated Wilson's conflicting testimony at the sentencing hearing and chose to credit one of Wilson's accounts about the number of times he purchased crack from Davis prior to July 27, to the rejection of Wilson's other account. Faced with Wilson's own conflicting reports, the district court was free to evaluate the testimony and to make this credibility choice. We see no error in the district court's determination that Wilson's cross-examination testimony was more worthy of credence than his direct testimony and conclude that Davis sold Wilson cocaine on ten

occasions, five of which involved crack. This is especially true in the light of the fact that this credibility choice finds corroboration in the factual account of the crack sales incorporated into the PSR. Thus, it is clear that under our standard of review the information the district court used to determine the quantity of drugs sold by Davis was reasonably reliable.

Our conclusion that the district court committed no error is further buttressed by the fact that, as in Young, the district court here took into account the uncertainty of Wilson's report of Davis' crack sales when it adopted the PSR. Specifically, Wilson stated for the PSR and testified at the sentencing hearing that he "occasionally would buy powder cocaine." This testimony would support as few as two or three purchases of powder cocaine and as many as seven or eight sales of crack. Nevertheless, the PSR and the district court discounted the amount of crack Davis sold to Wilson by assuming only five transactions involving crack.[2] Given the trial court's conservative estimate, we must say that the

_____

[2]We especially note that the PSR and the district court made allowances for the amount of crack sold in each transaction. Wilson stated variously that he would purchase one or two ounces during each sale (his statement for the PSR), and that the purchases ranged from "one-half ounce to two ounces" (Wilson's hearing testimony). The PSR, adopted by the district court, assumed sales of one ounce each in order "[t]o allow Davis the benefit of the doubt." This assumption falls at the bottom of the range Wilson provided for the PSR and roughly in the middle of the range Wilson gave at the sentencing hearing.

court's attribution to Davis of seven ounces of crack cocaine is not clearly erroneous.

                                III

Davis next contends that the district court erred by attributing to him the full two ounces he negotiated to sell to Wilson on July 27, 1994. Instead, Davis argues that he should be charged with the actual amount he sold (46.4 grams or slightly less than less than two ounces).

We review the application of the sentencing guidelines de novo. United States v. Edwards, 65 F.3d 430 (5th Cir. 1995). A district court may attribute to a defendant convicted of possession with intent to distribute the amount of an unconsummated transaction, unless the defendant did not intend or was not reasonably capable of producing that amount. United States v. Garcia, 889 F.2d 1454, 1457 (5th Cir. 1989), cert. denied, 494 U.S. 1088 (1990). In this case, Davis has offered no testimony to support his contention that he did not intend to sell Wilson two ounces or that he was not capable of doing so. We therefore affirm the district court's decision to use the negotiated amount.

IV

We thus hold, based on all of the evidence available for the district court's consideration, that the determination that seven ounces of crack cocaine were attributable to Davis was not clearly erroneous.  The sentence of Joe Drell Davis is therefore

A F F I R M E D.