UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

NO. 00-10380

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ROBERT A. MACKAY, also known as
Fatman, also known as Fat Boy

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
Cr. No. 3:97-CR-208-01

_____

May 28, 2002

Before EMILIO M. GARZA and PARKER, Circuit Judges and HINOJOSA[*],
District Judge.

Per Curiam:[**]

Defendant-appellant, Robert A. Mackay (Mackay) appeals the

final judgment of the United States District Court, Northern

_____

[*] District Judge of the Southern District of Texas, sitting by
designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this
opinion should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

District of Texas, in his criminal case. Mackay presents four points of error related to his plea agreement and the district court's refusal to allow him to withdraw his guilty plea, issues related to the quantity of the controlled substance used to determine the sentence imposed, the use of sentence enhancements factors under the sentencing guidelines not mentioned in the indictment, and the admission at Mackay's sentencing of a transcript of testimony used at a co-conspirator's sentencing hearing. For the reasons that follow, we affirm.

## I. Background

On June 24, 1997, Mackay and 18 co-defendants were charged in a single count indictment with conspiring to distribute and possess with intent to distribute one thousand kilograms or more of marijuana in violation of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(vii) and 846. A twenty-two count superseding indictment was filed on August 28, 1997 naming Mackay and 21 co-defendants.

In the superseding indictment Mackay was charged in count one with conspiracy to distribute and possess with intent to distribute one thousand kilograms or more of marijuana in violation of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vii) and 846. Counts two, four and twenty charged Mackay with the use of a communication facility during the commission of a drug

2

trafficking crime in violation of Title 21 U.S.C. § 843(b) and in count twenty-one, he was charged with conspiracy to commit money laundering in violation of Title 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(2)(A) and 1956(h).

On January 5, 1998, Mackay plead guilty to the marijuana conspiracy alleged in count one of the superseding indictment pursuant to a plea agreement with the Government. In the plea agreement, among other matters, Mackay's statutory sentencing range was identified as between 10 years and life imprisonment. Mackay agreed not to contest any forfeiture proceedings related to three specific pieces of real property (constituting 475 acres, 350 acres, and 20 acres), a 1995 Lincoln Towncar, and assorted jewelry. In return, the Government agreed to return to Mackay all other property the Government had seized which was subject to forfeiture action but not among the previously listed items.

Unbeknownst to the Government's trial attorneys, some of the property that was to be returned to Mackay (which included two Ford pick-up trucks, various weapons, and one Bel Aire Chevrolet) had already been administratively forfeited by the Drug Enforcement Administration (DEA) before the parties entered into the plea agreement. Mackay had not filed a petition for remission with the DEA and had not preserved his rights with regards to said property under the DEA administrative process.

3

In March 1998, Mackay moved to withdraw his guilty plea, alleging that the Government had not returned all the property under the agreement, specifically the items that were administratively forfeited by the DEA.[1]  In an evidentiary hearing before the district court in April, Mackay requested either specific performance under contract law, or that adjustments to the plea agreement be made in order that Mackay could be "made whole either with a replacement item or compensating value," or in the alternative, Mackay wanted to withdraw his plea.  Meanwhile, the Government had proceeded to make available to Mackay the property listed in the agreement except that which was administratively forfeited.

In August of 1998, the Government explained to the district court that the DEA had now received a petition for remission from Mackay and would conduct an expedited review of the forfeiture proceedings.  The Government also explained that in order for Mackay to receive the administratively seized property he was requesting, Mackay was required to pay $15,450.00 to the DEA.  As a result, the Government suggested that Mackay could stipulate to the forfeiture of a real estate property he had agreed to forfeit

_____

[1] The court notes that the Government's responses to Mackay's attempts to withdraw his plea refer to an agreement made with his wife and co-defendant, Kris Mackay, who was represented by a different attorney, had a similar return-of-property clause in her plea agreement, and had requested specific performance only.  While explaining the proceedings surrounding the performance of the plea agreement, this opinion will refer to dealings with the Mackays as dealings with Mackay as Mackay is the only defendant in this appeal

4

and that the court could make Mackay a lien holder for $15,450.00 on that property and, thus, the sale of the property would make Mackay whole. The Government stated that said property was worth about $500,000.00 and that pre-existing liens on the real property totaled $185,000.00. Mackay, however, objected asserting, among other things, that it was unlikely that any money would be left after the sale of said property to satisfy the lien.

After conducting hearings, the court found that although the Government might have been negligent in its original promises in the plea agreement, it had "taken action in good faith to bring about substantial compliance with the plea agreement." The court concluded that the government complied with the agreement "for all practical purposes" and that a withdrawal of the plea would not be in the interest of justice. Mackay refused to sign a stipulation agreement as to the forfeiture of the property he had agreed to forfeit and moved for reconsideration of the denial of his motion to withdraw his plea.

Mackay eventually did pay the DEA $15,450.00 for the release of the administratively forfeited items, but Mackay told the court that it did not constitute an admission that the plea agreement had been met. The Government then requested that the court impose a lien, including the $15,450.00 to reimburse Mackay for the DEA administratively released property, on a property

5

which Mackay had agreed to forfeit.  As an alternative, the Government ended up agreeing to dismiss the forfeiture of a 475 acre piece of property which Mackay had agreed to forfeit.  The Government's agreement would allow Mackay to recover his money in lieu of a lien on the property and he would thus be reimbursed for the $15,450.00.  The court then denied the request to reconsider the denial of the motion for withdrawal of the guilty plea and the case was set for sentencing.

Mackay's Pre-Sentence Report (PSR) calculated his offense level at 40.  This included a base offense level of 34 for 5,208.81 kilograms of marijuana, an increase of 2 for possession of a firearm, an increase of 4 for Mackay's role in the offense, an increase of 2 for obstruction of justice, and a decrease of 2 for acceptance of responsibility.  Mackay's criminal history category was calculated at III, and the resulting guideline level was 360 months to life.

During the sentencing hearing, the Government moved to introduce the transcript of co-defendant Jose Rosales' sentencing hearing, which included the testimony of a deceased unindicted co-conspirator, Larry Mears (Mears).  Mackay objected to the introduction of Mears' testimony stating there was no opportunity for cross-examination.  The court overruled the objection stating that Mears' testimony was given under oath and that the court was allowed to hear hearsay evidence during sentencing.

The court adopted the PSR findings regarding Mackay's base offense level, firearm enhancement, and role enhancement. The court rejected the enhancement for obstruction of justice and also found that Mackay had not accepted responsibility. On March 30, 2000 the district court, using the resulting guideline calculation of 40 and criminal history category of III, sentenced Mackay to life imprisonment. Mackay's sentence was later reduced to 405 months because there was a miscalculation of Mackay's criminal history category.

As stated previously, Mackay raises four issues on appeal. First, he argues that the Government failed to perform as it was required under the plea agreement and that he was entitled to withdraw his guilty plea. Second, Mackay maintains that the factual resume at the time of the plea failed to list as an element of the offense the drug quantity involved and that it constitutes error under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Third, Mackay argues that sentencing guideline enhancements imposed for possession of a firearm and his role in the offense were plainly erroneous because neither were alleged in the indictment nor proved beyond a reasonable doubt as required under *Apprendi*. Finally, Mackay argues that the district court erred in admitting the transcript of testimony presented at a related sentencing hearing because Mackay was deprived of his right to cross-examine a witness.

7

## II. Plea Agreement Claims

Mackay's first argument on appeal is that the government violated the terms of his plea agreement by the DEA requiring him to pay $15,450.00 to return property he was entitled under the agreement. This argument is made although the Government subsequently released a forfeiture claim on a property which, in effect, reimbursed Mackay for the $15,450.00.

When interpreting terms of a plea agreement, this court applies general principles of contract law. *United States v. Cantu*, 185 F.3d 298, 304 (5th Cir. 1999). In order "to assess whether a plea agreement has been violated, this court considers 'whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement.'" *Cantu*, 185 F.3d at 304 (quoting *United States v. Valencia*, 985 F.2d 758, 761 (5th Cir. 1993)). "[T]he government is not permitted to breach its part of a plea agreement in such a way that frustrates the defendant's reasonable understanding of the agreement." *United States v. Asset*, 990 F.2d 208, 216 (5th Cir. 1993). The defendant bears the burden to prove by a preponderance of the evidence the underlying factors that establish the breach. *Cantu*, 185 F.3d at 304-05. Whether the Government violated the plea agreement is a question of law reviewed de novo. *Id.* at 305. The underlying facts showing whether a breach occurred are

reviewed for clear error. *United States v. Gibson*, 48 F.3d 876, 878 (5th Cir. 1995).

Mackay relies on *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427,433 (1971) for the proposition that the court erred in not allowing Mackay to withdraw his guilty plea. In *Santobello*, the Supreme Court vacated and remanded a case back to state court because the Court found that the government breached its agreement with the defendant. *Id.* at 262-63. The government in *Santobello* agreed not to recommend a sentence to the trial judge in exchange for a plea of guilty to a lessor included offense. *Id.* At the time of sentencing six months later, however, a different prosecutor recommended that the trial judge impose the maximum sentence. *Id.*

*Santobello* applies to cases in which the court must decide what remedy to apply when the government breaches a plea agreement. *United States v. Kurkculer*, 918 F.2d 295, 299 (1st Cir. 1990). "The Santobello Court did not hold that the government must fulfill every agreement or offer it makes. Rather, as we have consistently recognized, the Court was concerned with enforcing governmental promises that had induced the defendant to plead guilty." *United States v. Traynoff*, 53 F.3d 168, 170-171 (7th Cir. 1995). In order to reach *Santobello,* we must find that the Government materially breached the plea agreement.

A breach is material if the non-breaching party is deprived of the benefit of the bargain. *United States v. Castaneda*, 162 F.3d 832, 837 (5th Cir. 1998). "The less the non-breaching party is deprived of the expected benefits, the less material the breach." *Id.* "[I]f a party's 'nonperformance ... is innocent, does not thwart the purpose of the bargain, and is wholly dwarfed by that party's performance,' the breaching party has substantially performed under the contract, and the non-breaching party is not entitled to rescission." *Id.* at 838.

As stated previously, Mackay agreed to plead guilty to the first count of his indictment and to not contest any forfeiture proceedings related to three specific pieces of real property (constituting 475 acres, 350 acres, and 20 acres), a 1995 Lincoln Towncar, and assorted jewelry. In return, the Government promised to return to Mackay all the property the Government had seized which was subject to forfeiture action but not among the listed items.

The alleged breach arose when the Government later discovered that several items (including two Ford pick-up trucks, various weapons, and one Bel Aire Chevrolet) had before the parties entered into the plea agreement been administratively forfeited by the DEA. In an attempt to resolve the situation, the Government made offers to make Mackay whole on the $15,450.00 it would cost to release the items from the DEA. The Government

10

was diligent in returning all other property, and eventually effectively reimbursed Mackay the $15,450.00 by not proceeding with the forfeiture of a 475 acre piece of property which Mackay was allowed to keep although he had agreed to forfeit said property.

Although the Government was delayed in returning all the property due Mackay, the Government substantially complied with the plea agreement. Mackay bargained for the return of all his property the Government had seized except for three specific pieces of real property (constituting 475 acres, 350 acres, and 20 acres), a 1995 Lincoln Towncar, and assorted jewelry. The only obstacle the Government encountered was the return of several items that the DEA administratively forfeited due to Mackay's failure to preserve his rights under the administrative process. Once the problem with returning the items was discovered, the Government proposed a plan to the court in which Mackay would receive the full benefit of his bargain. We hold that the Government substantially performed the plea agreement.

### III. *Apprendi* Claims

Mackay next contends that the court committed two errors under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). First, Mackay argues that the district court committed error under *Apprendi* because the factual resume at the

11

time of his guilty plea did not list the drug quantity involved as an element of the offense charged.  Second, Mackay argues that the district court's sentencing enhancements imposed for possession of a firearm and role in the offense constitute error under *Apprendi* because they were not alleged in the indictment nor proved beyond a reasonable doubt.  Mackay makes these objections for the first time on appeal.

An *Apprendi* issue raised for the first time on appeal is reviewed for plain error.  *United States v. Virgen-Moreno*, 265 F.3d 276, 297 (5th Cir. 2001), *United States v. Barton*, 257 F.3d 433, 440 (5th Cir. 2001).  Plain error review requires Mackay to show "(1) an error; (2) that is clear or plain; (3) that affects the defendant's substantial rights; and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings."  *United States v. Vasquez-Zamora*, 253 F.3d 211, 213 (5th Cir. 2001) (quoting *United States v. Vasquez*, 216 F.3d 456, 459 (5th Cir. 2000)).

Mackay first maintains that the district court erred under *Apprendi* because it failed to list the drug quantity as an element of the offense on the factual resume.  In *United States v. Keith*, we held in light of *Apprendi* that "to the extent that the drug quantity increases a sentence beyond the statutory maximum, it must be alleged in the indictment and proved to a jury beyond a reasonable doubt."  *United States v. Keith*, 230

12

F.3d 784, 786-87(5th Cir. 2000). Furthermore, "*Apprendi* is 'limited to facts which increase the penalty beyond the statutory maximum, and does not invalidate a court's factual finding for the purposes of determining the applicable Sentencing Guidelines.'" *United States v. Keith*, 230 F.3d 784, 787 (5th Cir. 2000) (quoting *United States v. Doggett*, 230 F.3d 160, 166 (5th Cir. 2000)).

Mackay pled guilty to count one of the superseding indictment which charges Mackay did "knowingly, intentionally, and unlawfully, combine, conspire, confederate, and agree . . . to distribute and possess with the intent to distribute one thousand kilograms or more of substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841 (a)(1) and 841 (b)(1)(A)(vii)." At the rearraignment, Mackay was read the indictment and was informed of the range of punishment for his offenses. Mackay then stated under oath that the facts set forth in his factual resume were true. The signed factual resume states that Mackay "knowingly, intentionally, and unlawfully, did combine, conspire, confederate, and agree together. . . to distribute and possess with the intent to distribute at least one thousand kilograms of marijuana, a Schedule I controlled substance."

13

Mackay pled guilty to violation of Title 21 U.S.C. § 846 which carries a range of punishment prescribed in the underlying offense (Title 21 U.S.C. §§ 841 (a)(1) and 841 (b)(1)(A)(vii)). Pursuant to Title 21 U.S.C. 841 (b)(1)(A)(vii), the statutory maximum punishment is life imprisonment for "1000 kilograms or more of a mixture or substance containing a detectible amount of marijuana." Although Mackay was charged and pled guilty to more than 1000 kilograms, the court found that Mackay was responsible for 5,208.81 kilograms of marijuana for sentencing purposes. The 405 month sentence imposed was still within the statutory maximum of life imprisonment. The district court committed no error under *Apprendi*.

Mackay next argues that the increase in his sentence for possession of a firearm and his role in the offense constitutes error under *Apprendi* because neither were alleged in the indictment nor proved beyond a reasonable doubt. In *United States v. Slaughter*, 238 F.3d 580 (5th Cir. 2001), we held that in light of *Apprendi*, "a fact used in sentencing that does not increase the penalty beyond the statutory maximum for the crime charged and proven need not be alleged in the indictment and proved to a jury beyond a reasonable doubt." *Id.* at 583. As stated above, *Apprendi* is "limited to facts which increase the penalty beyond the statutory maximum, and does not invalidate a

14

court's factual finding for the purposes of determining the applicable Sentencing Guidelines." *Keith*, 230 F.3d at 787.

The court's guideline sentencing enhancements for possession of a firearm and role in the offense amounts to an upper limit guideline sentence which did not exceed the statutory maximum of life imprisonment. Thus, Mackay's sentence increase due to possession of a firearm and role in the offense does not violate *Apprendi* because the resulting sentence was still within the statutory maximum.

## IV. Sentencing Hearing Claims

Mackay's last argument on appeal is that the district court erred in admitting the transcript testimony of co-defendant Jose Rosales during Mackay's sentencing hearing. Although the testimony was given at a related sentencing hearing, Mackay's objection is that the transcript included the testimony of a deceased co-conspirator who Mackay did not have the opportunity to cross-examine. We review a district court's ruling on the admissibility of testimony for abuse of discretion. *United States v. Matthews*, 178 F.3d 295, 303 (5th Cir. 1999).

"For sentencing purposes, the district court may consider any relevant evidence 'without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its

15

probable accuracy.'" *United States v. Davis*, 76 F.3d 82, 84 (5th Cir. 1996) (quoting U.S. Sᴇɴᴛᴇɴᴄɪɴɢ Gᴜɪᴅᴇʟɪɴᴇs Mᴀɴᴜᴀʟ § 6A1.3(a) (2000)). Facts, for sentencing purposes, have "some indicia of reliability" where they are "reasonably reliable." *Davis*, 76 F.3d at 84 (citing *U.S. v. Shacklett*, 921 F.2d 580, 585 (5th Cir. 1991)). "Even uncorroborated hearsay evidence may be sufficiently reliable." *United States v. Gaytan*, 74 F.3d 545, 558 (5th Cir. 1996) (citing *United States v. West*, 58 F.3d 133, 138 (5th Cir. 1995)). "The defendant bears the burden of demonstrating that information the district court relied on in sentencing is 'materially untrue.'" *Davis*, 76 F.3d at 84 (quoting *United States v. Vela*, 927 F.2d 197, 201 (5th Cir. 1991)).

Although several portions of co-defendant Rosales' sentencing hearing transcript were introduced by the Government containing testimony of more that one witness, Mackay only challenges the introduction of co-conspirator Mears' testimony. Mears testified about his relationship to Rosales and Mackay, the method Rosales and Mackay used to transport marijuana, and the estimated quantity of marijuana Rosales and Mackay transported. The district court implicitly found that Mears' testimony provided sufficient indicia of reliability to be used at Mackay's sentencing hearing because it was permissible to consider hearsay evidence and because it was given under oath at Rosales'

16

sentencing hearing.  In addition, the record shows that Mears'

testimony was cumulative.  Testimony by agents and examination of

Rosales' ledgers at Mackay's sentencing hearing also indicated

that Mackay and Rosales were leaders of the conspiracy and were

responsible for transporting more than 5,000 kilograms of

marijuana.

Mackay first argues that *United States v. Jackson*, 990 F.2d

251 (6th Cir. 1993), should control in Mackay's situation.  In

*Jackson*, the Sixth Circuit stated that "[t]o sentence a defendant

based on facts established at someone else's trial . . . violates

due process."  *Id.* at 254.  The Sixth Circuit, however, has

clarified *Jackson* by stating "*Jackson* simply emphasizes that a

district court must be clear as to the source of the evidence on

which it bases its factual finding, and that the source may not

be from an unrelated proceeding."  *Logan v. United States*, 208

F.3d 541, 544-45 (6th Cir. 2000).  *Jackson* is not applicable to

Mackay's case.

Mackay's second argument is that under *Apprendi* and its

predecessor *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215,

143 L.Ed.2d 311 (1999), constitutional rights apply in sentencing

hearings and should require the right to confrontation and cross

examination of witnesses whose testimony is being used to

establish factual elements.

17

*Apprendi* and *Jones* do not apply in this case. As stated previously, the Supreme Court in *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 120 S.Ct. at 2362-63. "*Apprendi* is 'limited to facts which increase the penalty beyond the statutory maximum, and does not invalidate a court's factual finding for the purposes of determining the applicable Sentencing Guidelines.'" *United States v. Keith*, 230 F.3d 784, 787 (5th Cir. 2000) (quoting *United States v. Doggett*, 230 F.3d 160, 166 (5th Cir. 2000)). In Mackay's case, Mackay was sentenced within the statutory guideline for the offense charged. *Apprendi* and *Jones* are thus not applicable to Mackay's case.

## V. Conclusion

For the foregoing reasons, we conclude that Mackay's conviction and sentence imposed by the United States District Court for the Northern District of Texas should be AFFIRMED.

18