**REVISED - August 12, 1999**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-50574
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY ALOZIE OGBONNA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

August 5, 1999

Before POLITZ, JOLLY, and DUHÉ, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Anthony Alozie Ogbonna appeals his convictions for involvement in drug activity.  Ogbonna was convicted of conspiracy to possess with intent to distribute heroin in violation of 21 U.S.C. § 846, and possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1).  The conviction was the fruit of an extensive, undercover investigation.  Ogbonna presents us with a handful of arguments challenging his conviction and sentence.  We reject all of his arguments and affirm both the conviction and sentence.

I

After learning about the existence of a drug ring in Austin, Texas, Investigator Troy Officer went undercover in order to gain information about the conspiracy. During his undercover operations, Investigator Officer met with Ogbonna on multiple occasions and engaged in multiple drug transactions. Ogbonna does not dispute this, and for good reason: the police obtained both video and audio recordings of Ogbonna's drug transactions.

We briefly summarize Ogbonna's known, drug-related activities by noting that Ogbonna sold over 440 grams of heroin to Investigator Officer; Ogbonna promised to sell Officer much larger quantities of heroin; Ogbonna gave Officer a semi-automatic firearm; and Ogbonna informed Officer that he possessed hand grenades. These facts are not disputed on appeal.

After a jury found Ogbonna guilty of the drug offenses, the district court sentenced him to twenty-seven years in prison. Pursuant to the Sentencing Guidelines, the district court based this sentence on the amount of drugs involved, Ogbonna's role in the offenses, and Ogbonna's possession of a dangerous weapon.

II

Before addressing the merits of Ogbonna's arguments, we dispose of Ogbonna's motion to file a supplemental pro se brief. Ogbonna asks us to allow the filing of his pro se supplemental brief even though his attorney has already filed what is clearly a

competent brief on Ogbonna's behalf.  We DENY Ogbonna's motion to file a pro se brief.[1]

The brief submitted by Ogbonna plainly demonstrates why allowing the submission of a pro se brief should be discouraged when the appellant is represented by counsel.  The argument in Ogbonna's supplemental brief relies on the defunct holding in United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998) ("Singleton I"), rev'd en banc 165 F.3d 1297 (10th Cir. 1999).  Over one month before Ogbonna's pro se brief was filed with our court, the Tenth Circuit repudiated the holding and reasoning in Singleton I.  More importantly, our own court squarely rejected the reasoning in Singleton I over two months before filing of the pro se brief.  See United States v. Haese, 162 F.3d 359, 366-68 & n.2 (5th Cir. 1998).  The pro se brief omits any mention of these subsequent cases.  There simply is no reason for the court to entertain such frivolous arguments, which constitute sanctionable conduct, when the appellant is represented by counsel.[2]

---

[1]See Myers v. Johnson, 76 F.3d 1330, 1335 (5th Cir. 1996):

> [T]here is no constitutional right to hybrid representation [on appeal.]  Thus, when a criminal appellant accepts the assistance of counsel, but later objects to his attorney's appeal strategy or preparation of the brief, the criminal appellant cannot then expect to be allowed to file a supplemental pro se brief.  By accepting the assistance of counsel the criminal appellant waives his right to present pro se briefs on direct appeal.

[2]Ogbonna's counsel comes close to warranting sanctions himself.  Although he did not sign onto Ogbonna's pro se brief, he did file and sign the motion to file Ogbonna's supplemental brief.

III

A

Ogbonna makes one argument for overturning his conviction.  He argues that the district court erred by allowing two pieces of evidence into his trial:  evidence of the semi-automatic firearm that Ogbonna gave to Officer and testimony of Ogbonna's claimed ability to procure hand grenades.  We will not, however, even pause to consider whether the district court abused its ample discretion in allowing this weapons-evidence into a drug offense trial.  Any error that may have occurred was surely harmless.  See United States v. Green, No. 98-30484, 1999 WL 439438, at *4 (5th Cir. June 30, 1999) (noting that if an abuse of discretion is found in district court's evidentiary ruling, the harmless error doctrine is applied).  The other evidence of Ogbonna's involvement in the drug conspiracy was overwhelming and included both audio and video recordings of his unlawful, drug-related conduct.

B

Ogbonna next makes four arguments attacking his sentence. "We review de novo a district court's application of the [Sentencing] Guidelines, but will reverse factual findings made

---

This motion was physically bound with the pro se brief itself. Attorneys are not to file or give aid in filing briefs that base their arguments on case law contrary to binding Fifth Circuit precedent without mentioning the binding precedent.  Frivolous arguments are not to be made to this court.  See, e.g., Fed. R. App. P. 38.

during sentencing only if they are clearly erroneous." <u>United States v. Washington</u>, 44 F.3d 1271, 1280 (5th Cir. 1995).

First, Ogbonna argues that the district court clearly erred in attributing at least one, but less than three, kilograms of heroin to him for sentencing purposes. He maintains that he should only have 441.31 grams attributed to him for sentencing purposes because that is the amount he actually sold to Investigator Officer. Although Ogbonna concedes that he told Officer on several occasions that he possessed and could acquire much more heroin (on one occasion telling Officer that he had one kilogram available at that time; on another occasion telling Officer that he could deliver two kilograms without a problem), he now argues that he was incapable of acquiring that much heroin.

But for Ogbonna's argument to succeed, he must extend his argument further. He must argue not only that he was incapable of possessing an additional 560 grams (recall that he had already delivered over 440 grams), but that he was not part of a conspiracy that possessed 560 grams. <u>See</u> U.S.S.G. § 1B1.3(a)(1)(B)(discussing relevant conduct of a conspirator for sentencing purposes); <u>United States v. Carreon</u>, 11 F.3d 1225, 1230 (5th Cir. 1994) (discussing

§ 1B1.3(a)(1)(B)).[3] We conclude that the district court did not err in attributing over 1 kilogram of heroin to Ogbonna.

C

Next, Ogbonna argues that the district court clearly erred in finding that he possessed a dangerous weapon during a drug trafficking offense. See U.S.S.G. § 2D1.1(b)(1). The evidence revealed that Ogbonna gave Investigator Officer a "Mac-10" semi-automatic firearm and that Ogbonna told Officer that he had carried a firearm during their first transaction. Ogbonna now argues that he did not give Officer the Mac-10 during a drug transaction. He further argues, without any citation to support the proposition, that "Officer's testimony that [Ogbonna] told him he had a gun at their first meeting three months earlier, without any evidence of the actual gun, cannot support a two level enhancement." To the contrary, a district court could find, by a preponderance of the evidence, that a defendant possessed a firearm at a previous meeting when, sometime later, that defendant tells an undercover officer that he possessed a firearm. Such a conclusion is bolstered by evidence showing that the defendant had easy access to firearms (as was shown when Ogbonna gave Officer the Mac-10). The

---

[3]Ogbonna relies on United States v. Davis, 76 F.3d 82, 85 (5th Cir. 1996), for the proposition that a district court may not attribute to a defendant the amount of drugs in an unconsummated transaction if the defendant was not reasonably capable of producing that amount. In Davis, however, we did not consider the attributable drug amount in the context of a conspiracy. In that case, the defendant only pled guilty to a violation of 21 U.S.C. § 841(a)(1) (possession with intent to distribute).

district court did not clearly err in its finding of fact.  The enhancement under § 2D1.1(b)(1) was appropriate.

D

Ogbonna challenges the district court's decision to enhance his sentence under U.S.S.G. § 3B1.1(a):

> Based on the defendant's role in the offense, increase the offense level as follows:
>
>> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

Ogbonna argues (1) that he was not an organizer or leader, and (2) that the conspiracy did not involve five or more participants, nor was it otherwise extensive.  After reviewing the evidence and record of the case, we conclude that the district court did not clearly err in making the factual finding that the criminal activity was "otherwise extensive"[4] and that Ogbonna was an organizer or leader.

E

Finally, in his last sentencing challenge, Ogbonna argues that the district court erred in refusing to depart downward for what Ogbonna describes as a classic case of sentencing entrapment. Ogbonna claims that he was not predisposed to sell over 400 grams of heroin to a willing buyer.  Only after the government agents

---

[4]The transcript of the sentencing hearing indicates that the district court relied on the "otherwise extensive" language in § 3B1.1 in overruling Ogbonna's objection to this enhancement.

-7-

goaded him on, continues Ogbonna's argument, did he continue to supply more heroin. Ogbonna argues that the government should have arrested him after the first transaction, thus, cutting short his criminal liability. Ogbonna asked the district court to depart downward from the otherwise applicable guideline range as allowed by U.S.S.G. § 4A1.3. Ogbonna appeals the district court's decision to reject his request.

We do not have appellate jurisdiction to address this argument. Under 18 U.S.C. § 3742(a), "[w]e have jurisdiction to review a defendant's challenge to a sentence only if it was imposed in violation of law; was imposed as a result of a misapplication of the sentencing guidelines; was the result of an upward departure; or was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable." United States v. DiMarco, 46 F.3d 476, 477 (5th Cir. 1995). When a defendant makes a motion for a downward departure under § 4A1.3, based on the defense of sentence entrapment, we lack appellate jurisdiction to review the district court's disposition of the motion. See United States v. Morgan, 117 F.3d 849, 860-61 (5th Cir. 1997); United States v. Jones, 102 F.3d 804, 809 (6th Cir. 1996); see also DiMarco, 46 F.3d at 477 (stating that "claims challenging the discretionary denial of downward departures do not fall within any of the categories

listed in § 3742(a)").  Ogbonna's sentencing entrapment argument, therefore, cannot provide grounds for reversing his sentence.[5]

## III

For the foregoing reasons, both the conviction and sentence are

A F F I R M E D.

---

[5]Nothing in the record indicates that the district court based its decision on an erroneous belief that it lacked the authority to depart.  See United States v. Landerman, 167 F.3d 895 (5th Cir. 1999):

> We have jurisdiction to review a district court's decision not to depart downward from the guideline range only if the district court based its decision upon an erroneous belief that it lacked the authority to depart. Moreover, something in that record must indicate that the district court held such an erroneous belief.

Id. at 899 (citations omitted).