# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-40780

Consolidated with 14-40905

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

GARY LYNN MCDUFF,

Defendant–Appellant.

United States Court of Appeals
Fifth Circuit

**FILED**

February 3, 2016

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Eastern District of Texas
USDC No. 4:09-CR-90

Before PRADO, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:*

Gary Lynn McDuff appeals his convictions and sentence for conspiracy to commit wire fraud and for money laundering.  We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-40780 cons/w No. 14-40905

**I**

McDuff was indicted in 2009 for conspiracy to commit wire fraud and for money laundering.[1] According to the superseding indictment, McDuff, his co-defendant, and an unindicted co-conspirator made a series of misrepresentations to investors while soliciting investments in the Lancorp Financial Fund Business Trust ("Lancorp Fund," "Lancorp," or the "Fund"). Among other things, McDuff and his co-conspirators—in both conversations with prospective investors and a prospectus provided to them—falsely stated that the Lancorp Fund was duly registered, would maintain an insurance policy to protect against losses, and would only invest in highly rated debt securities. They also failed to disclose that McDuff was a convicted felon without the requisite securities licenses or that his co-defendant was barred by California authorities from soliciting investments due to his past involvement in fraudulent securities offerings. McDuff and his co-conspirators received payments totaling approximately $10 million from over one hundred investors and diverted the bulk of those investments to an illegal investment scheme called Megafund. Megafund returned at least $1 million in payments to Lancorp, an entity controlled by the co-conspirators, and approximately two-thirds of those payments were diverted for their personal use.

McDuff remained abroad for some time after learning of his indictment but was eventually apprehended in 2012. Throughout the proceedings that followed, he represented himself but largely refused to participate meaningfully in his defense, except to claim that his criminal prosecution was precluded by a prior "private administrative judgment."[2] In the course of the two-day trial, McDuff declined to cross-examine the government's witnesses or

---

[1] *See* 18 U.S.C. §§ 1349, 1956(a)(1)(A)(i).

[2] McDuff was found competent to conduct his own defense after the district court ordered a psychological examination.

present a defense. He was found guilty on both counts and received a within-Guidelines sentence of 240 months for each count, with 60 months of the Count Two sentence to run consecutively with the sentence for Count One. The court also ordered that McDuff pay $6,563,179.49 in restitution. McDuff filed two appeals—one from the conviction itself and the other from the district court's denial of his pro se "Motion to Reserve Right to Colorable Showing of Factual Innocence"—which were consolidated for our consideration before this case was briefed.

## II

McDuff, through counsel, raises several arguments on appeal. Because inadequately briefed arguments are considered abandoned on appeal, we address only those arguments adequately briefed.[3]

## A

McDuff has asserted an assortment of claims related to venue and the statute of limitations. McDuff contends that "[t]here [was] no obvious reason to charge and prosecute [him] in the Eastern District of Texas" and that the government did not prove any criminal act arising within the five-year period preceding his indictment. Although "the government must prosecute an offense in a district where the offense was committed,"[4] the defendant "may waive an objection to venue by failing to raise the issue before trial."[5] Here, McDuff's failure to object to venue before the trial court means that his objection is waived.

---

[3] *See United States v. Charles*, 469 F.3d 402, 408 (5th Cir. 2006) ("Inadequately briefed issues are deemed abandoned.").

[4] FED. R. CRIM. P. 18.

[5] *United States v. Carreon-Palacio*, 267 F.3d 381, 391 (5th Cir. 2001); *see also id.* at 392 ("[A] defendant may raise an appellate challenge to a court's failure to instruct on venue by establishing that trial testimony put venue at issue and a timely challenge was made or an instruction was requested.").

No. 14-40780 cons/w No. 14-40905

McDuff's statute-of-limitations argument is foreclosed for similar reasons.  He argues for the first time on appeal that his prosecution should have been barred by the five-year statute of limitations in 18 U.S.C. § 3282(a).[6] However, as the Supreme Court has recently confirmed, a defendant "cannot successfully raise the statute-of-limitations defense in § 3282(a) for the first time on appeal."[7]

**B**

In his second and third issues, McDuff objects to the district court's disclosure to the venire that McDuff was a convicted felon, as well as its admission of evidence relating to his past conviction.  The government responds that the prior conviction was alleged as part of the "manner and means of the offense" because McDuff's failure to disclose that conviction was "a material and intrinsic part of the fraud."  The government further notes that McDuff failed to object to the admissibility of his past conviction at trial, so only plain error would warrant reversal.

Although Federal Rule of Evidence 404(b) bars the introduction of evidence relating to past crimes or bad acts in certain circumstances, it does not apply to "[e]vidence that is inextricably intertwined with the evidence used to prove the crime charged."[8]  Here, the indictment alleged that the Lancorp Fund was structured so as to deliberately obscure McDuff's role and criminal history.  At trial, the government adduced testimony that Lancorp Fund investors would not have invested had they known of McDuff's prior money-

---

[6] *See* 18 U.S.C. § 3282(a) ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.").

[7] *Musacchio v. United* States, No. 14-1095, 2016 WL 280757, at *8 (U.S. Jan. 25, 2016); *accord United States v. Arky*, 938 F.2d 579, 582 (5th Cir. 1991) (per curiam).

[8] *United States v. Hawley*, 516 F.3d 264, 267 (5th Cir. 2008) (quoting *United States v. Navarro,* 169 F.3d 228, 233 (5th Cir. 1999)).

No. 14-40780 cons/w No. 14-40905

laundering conviction.  McDuff's past conviction was "inextricably intertwined" with the present case, and the district court did not err by admitting the evidence in question.  Additionally, any error by the district court was not "clear or obvious," and given the overwhelming evidence of McDuff's guilt, the decision to admit the evidence did not "affect[] the outcome of the district court proceedings."[9]

## C

McDuff asserts a *Brady* violation.[10]  He cites depositions, a declaration in an SEC enforcement action, and a published district court opinion that purportedly demonstrate that the testimony presented at trial could not have been true; he then asserts that the government "suppressed" those documents. But McDuff resolutely declined to review the "more than 20 boxes of documents" that the government timely made available to him before trial. The record reflects that the "newly discovered" documents were made available to him by the government.  Alternatively, McDuff's *Brady* argument fails because he has not demonstrated that his "nondiscovery of the allegedly favorable evidence" was not "the result of a lack of due diligence."[11]

To the extent McDuff asserts that the evidence presented by the government was insufficient to sustain a conviction, his challenge fails. McDuff failed to move for a judgment of acquittal under Rule 29.[12]  Plain error review thus applies.[13]  This is not a case in which "the record is *devoid of evidence* pointing to guilt" or "the evidence is so tenuous that a conviction is

---

[9] *See United States v. Delgado*, 672 F.3d 320, 329 (5th Cir. 2012) (en banc) (quoting *Puckett v. United States,* 556 U.S. 129, 135 (2009)) (describing standard for plain error).

[10] *See Brady v. Maryland*, 373 U.S. 83 (1963).

[11] *See United States v. Walters*, 351 F.3d 159, 169 (5th Cir. 2003).

[12] *See Delgado*, 672 F.3d at 328.

[13] *Id.*

shocking."[14]    In McDuff's two-day trial, prosecutors presented ample and uncontradicted evidence of his guilt on both counts.  Various investors testified that McDuff and his co-conspirators were working together to solicit investments in Lancorp Fund.  They credibly explained that they relied on the representations made by McDuff and two co-conspirators regarding the security of the investment.    Other witnesses demonstrated that these representations were false and the Fund's handling of the money put the investors' principal at grave risk.  Finally, the evidence showed that McDuff and his co-conspirators diverted the investors' funds for their personal gain. McDuff presented no evidence to the contrary.  The verdict against him was amply supported by the evidence.

## D

Relying on the Supreme Court's decision in *United States v. Santos*[15] and subsequent Fifth Circuit cases, McDuff argues that his conviction for promotional money laundering[16] impermissibly merged into his conviction for conspiracy to commit wire fraud.[17]

The first count charged McDuff and his co-defendant with conspiring to solicit payments from investors based on a series of false representations as to how the money would be invested.  The indictment cited as overt acts a series

---

[14] *Id.* at 331 (quoting *United States v. Phillips*, 477 F.3d 215, 219 (5th Cir. 2007)).

[15] 553 U.S. 507 (2008).

[16] *See* 18 U.S.C. § 1956(a)(1) ("Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--(A)(i) with the intent to promote the carrying on of specified unlawful activity . . . shall be sentenced to a fine . . . or imprisonment for not more than twenty years, or both.").

[17] *See* 18 U.S.C. § 1349 (punishing conspiracy); *id*. § 1343 ("Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . . in interstate or foreign commerce, any writings . . . for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.").

of three wire transfers from Lancorp's account to Megafund, an illegal investment scheme, in February, April, and May 2005. The second count focused exclusively on a $500,000 transfer *from* Megafund *to* Lancorp in March 2005, charging that the transfer "involved the proceeds of a specified unlawful activity" (wire fraud) "with the intent to promote the carrying on of specified unlawful activity" (more wire fraud).

McDuff urges the court to review his merger argument de novo, citing an "oral motion to dismiss the case before opening statements." But the record reveals that no motion to dismiss related to the merger question was presented before trial or at the conclusion of the government's case. Until the sentencing phase began, McDuff devoted his energies entirely to his argument that the district court had no jurisdiction because the criminal case had somehow been settled by private proceedings in which the government had defaulted. We therefore review McDuff's merger challenge for plain error.

The doctrine of merger is applicable when "a defendant is convicted under two criminal statutes for what is actually a single crime."[18] This court addressed the implications of the merger doctrine for money-laundering convictions in *United States v. Kennedy*. There, we held that "in the money laundering context," the relevant inquiry is "whether the money laundering crime is based upon the same or continuing conduct of the underlying predicate crime, or whether the crimes are separate and based upon separate conduct."[19] We concluded that merger may be proved by either "demonstrat[ing] the underlying unlawful activity was not complete at the time the alleged money laundering occurred" or "show[ing] the transaction upon which the money laundering count is based was not a payment from profits of the underlying

---

[18] *United States v. Kennedy*, 707 F.3d 558, 563 (5th Cir. 2013).

[19] *Id*. at 565.

crime made in support of new crimes, but, instead, was a payment from gross receipts of the previously committed crime made to cover the costs of that same crime."[20]

The evidence introduced at trial sufficiently supported McDuff's separate conviction for money laundering. As an initial matter, the conspiracy charged in the first count was complete when the co-conspirators reached the relevant agreement and committed an overt act to advance it. That occurred no later than February 2005, when Lancorp's $5,000,000 transfer to Megafund (contravening the conspirators' representations to investors) took place. The transfer that was the subject of the second count did not occur until a month later, when Megafund transferred $500,000 back to Lancorp. As in *Kennedy*, "[i]f the entire scheme had come to a halt" after the February 2005 transfer that was the first overt act charged in the indictment, McDuff would still be guilty of the first count.[21] His conviction for a second offense based on conduct occurring after that date does not violate the merger doctrine.

Nor was the March 2005 transfer a mere "payment from gross receipts of the previously committed crime made to cover the costs of that same crime."[22] McDuff characterizes the wire from Megafund to Lancorp as a "'lulling' payment in furtherance of the wire fraud" or as an "expense-related activity necessary for the continuation of the scheme." The transfer at issue in the second count was a payment from a Ponzi scheme to the co-conspirators; the evidence showed they pocketed about two-thirds of that money and returned the remaining portion to investors to encourage further investments in their fraudulent scheme. The transfer in question was "profits, and profits only" and not attributable to any particular expenses arising from the conduct

[20] *Id.*

[21] *See id.* at 566.

[22] *Id.* at 565.

charged in the first count.[23] McDuff's conviction on the conspiracy and money-laundering charges did not merge.

### III

McDuff contends that the district court committed procedural error in determining his sentence.[24] He alleges that the district court made incorrect findings regarding the amount of the loss, his abuse of a position of trust, and his co-conspirator's violation of an administrative order. This court "review[s] calculations of the loss amount and other factual determinations for clear error," while legal questions regarding the interpretation of the Guidelines are reviewed de novo.[25]

McDuff first objects to the district court's loss calculation of $10,986,884.16, and the accompanying 20-level enhancement, under United States Sentencing Guidelines Manual § 2B1.1. The district court, he says, improperly failed to reduce the loss by "the value . . . of property returned to the victim." He alludes to a "payment of $1,000,000 paid to 'Lancorp Fund'" and to $2,000,000 contained in a separate fund for which, he says, he was not responsible. He also argues, referring to unspecified "published statements derived from [the Lancorp receiver's] website reconciliations," that the loss amount should be further reduced by $4,372,290.71 because the receiver returned that amount to investors before McDuff's indictment.

McDuff has not demonstrated that the district court's factual findings were clearly erroneous. His briefing is conclusory and essentially bereft of citations to facts in the record. Additionally, he has not shown that the funds in question were "returned . . . to the victims before the offense was detected" and accordingly fails to make the showing required by the Guidelines to reduce

---

[23] *See id.* at 567.

[24] *See Gall v. United States*, 552 U.S. 38, 51 (2007).

[25] *United States v. Morrison*, 713 F.3d 271, 279 (5th Cir. 2013).

the loss amount.[26] The Presentence Investigation Report, drawing on evidence presented at trial, fully supports the conclusion that the claimed loss was in excess of $7,000,000, which gave rise to the 20-level enhancement.

McDuff next objects to the district court's imposition of a two-level enhancement for abuse of a position of public or private trust under Sentencing Guidelines § 3B1.3. "A district court's application of section 3B1.3 is a sophisticated factual determination that an appellate court reviews for clear error."[27] The Presentence Investigation Report justified the enhancement on the grounds that the "[t]estimony at trial indicated that some of the investments into the Lancorp Fund were based solely on the defendant's previous interaction with investors in legitimate investment opportunities."

On appeal, McDuff argues that testimony of one of the investors—Francis Lynn Benyo—was not sufficient to "indicate the establishment of any special or fiduciary relationship of trust with McDuff." We conclude, however, that the evidence at trial was sufficient to support the enhancement for abuse of trust. In particular, the evidence suggested that Benyo's decision to invest with McDuff was based in large part on the apparent success of her previous investment with him, and that McDuff exercised essentially unfettered discretion over the investments solicited in this way.[28] The district court did not clearly err by finding that the two-level enhancement applies.

McDuff's last challenge to his sentence is based on a misreading of Sentencing Guidelines § 2B1.1(b)(9), which establishes a two-level

---

[26] *See* Sentencing Guidelines § 2B1.1, application note 3(E)(i).

[27] *United States v. Willett*, 751 F.3d 335, 344 (5th Cir. 2014) (quoting *United States v. Pruett,* 681 F.3d 232, 248 (5th Cir. 2012)).

[28] *See United States v. St. Junius*, 739 F.3d 193, 209 (5th Cir. 2013) ("[A] position of trust is characterized by professional or managerial discretion and that individuals who occupy these positions are typically under less supervision than individuals whose responsibilities are primarily non-discretionary in nature.").

enhancement "if the offense involved . . . (C) a violation of any prior, specific judicial or administrative order." The district court applied that enhancement after concluding that McDuff's co-defendant, Robert Reese, was barred by the state of California from soliciting investments but nonetheless did so as part of the charged conspiracy. McDuff argues the cease-and-desist order against Reese was issued on August 16, 2004, after the Lancorp Fund "became effective," and there was "no evidence that McDuff spoke to any potential investor" after the order issued. Thus, he concludes, the two-level increase amounted to an incorrect application of the Guidelines.

The relevant Guidelines language focuses, however, on what "the offense involved" rather than the defendant's own conduct. The Guidelines specify that "in the case of a jointly undertaken criminal activity," whether or not charged as a conspiracy, the relevant conduct includes "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity."[29] McDuff's contention that *he* had no further contact with investors after the case-and-desist order was issued against Reese is irrelevant. Evidence presented at trial, including testimony by Scot Bennett, supports the conclusion that Reese continued to solicit investments after the cease-and-desist order against him was issued in August 2004. Much of the conduct relevant to the Guidelines determination—that is, conspiracy charged in the first count and the wire transfer that was the subject of the second count—took place well after that date. The district court did not clearly err in finding that Reese's conduct was in contravention of the order and attributable to McDuff for purposes of sentencing.

---

[29] Sentencing Guidelines § 1B1.3(a)(1)(B); *see also id.* § 1B1.3, application note 2.

No. 14-40780 cons/w No. 14-40905

## IV

Finally, both McDuff and his appointed attorney, D. Kyle Kemp, have motions pending before the panel.  Kemp filed a motion to withdraw on November 6, 2015, and McDuff filed a motion on November 12, 2015 to "discharg[e] or disqualif[y]" Kemp and file a "corrected" brief.  McDuff and Kemp cite McDuff's pending bar complaint against Kemp and allegedly "unauthorized" disclosures in Kemp's November 2, 2015 letter to the court in support of their contention that McDuff should be permitted to proceed pro se.  Based on the unique factual circumstances of this case, we will exercise our discretion to permit Kemp to withdraw and allow McDuff to represent himself for the remainder of the proceedings in this court.[30]  Insofar, however, as McDuff's motion seeks leave to submit a proposed "corrected" brief and proceed on that basis, his motion is denied.[31]  He has not asserted that meritorious issues not presented in the initial brief filed by his counsel would be the subject of his pro se briefing.  In any event, we decline to exercise our discretion to permit additional briefing due to the unwarranted delay that would result.  McDuff's motion to take judicial notice of additional documents from other proceedings in connection with that brief is denied as moot.

\* \* \*

We AFFIRM the judgment of the district court in all respects.  Kemp's motion to withdraw is GRANTED.  McDuff's motion to proceed pro se for the

---

[30] *See* Fifth Circuit Plan for Representation on Appeal Under the Criminal Justice Act, § 5B, http://www.lb5.uscourts.gov/cja/cjaDocs/cja.pdf ("Counsel may be relieved upon a showing that there is a conflict of interest or other most pressing circumstances or that the interests of justice otherwise require relief of counsel.").  We express no opinion on the merit, if any, of McDuff's complaint.

[31] *See United States v. Ogbonna*, 184 F.3d 447, 449 (5th Cir. 1999) (denying defendant's motion to file pro se supplemental brief where his attorney "has already filed what is clearly a competent brief on [his] behalf"); *United States v. Wagner*, 158 F.3d 901, 901 (5th Cir. 1998) (rejecting defendant's motion to proceed pro se after his counsel filed an *Anders* brief and moved to withdraw).

12

No. 14-40780 cons/w No. 14-40905

remainder of the proceedings is GRANTED, but his motion to file a substitute brief and his motion for judicial notice are DENIED.