# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
HAIGHT, PENLAND, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist TRAVIS L. GALLEGOS**
**United States Army, Appellant**

ARMY 20130926

Headquarters, 7th Infantry Division
Jeffery D. Lippert, Military Judge
Lieutenant Colonel Michael S. Devine, Staff Judge Advocate

For Appellant: Captain Payum Doroodian, JA; Frank J. Spinner, Esquire (on brief); Major Christopher D. Coleman, JA; Captain Payum Doroodian, JA; Frank J. Spinner, Esquire (on reply brief).

For Appellee: Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Steven J. Collins, JA; Captain Anne C. Hsieh, JA (on brief)

20 June 2016

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

A military judge sitting as general court-martial convicted appellant, pursuant to his pleas, of one specification of disobeying a superior commissioned officer, in violation of Article 90, UCMJ, 10 U.S.C. § 890 (2012) [hereinafter UCMJ]. Contrary to his pleas, the court-martial convicted appellant of two specifications of aggravated assault of a child and one specification of assault consummated by battery of a child, in violation of Article 128, UCMJ.[1] The court-martial sentenced appellant to a bad-conduct discharge, confinement for eleven years, and a reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

---

[1] Appellant was acquitted of one specification of maiming (in violation of Article 124, UCMJ) and one specification of assault consummated by battery.

This case was referred to us pursuant to Article 66(b), UCMJ. Appellant raises three assignment of error, two of which merit discussion and one of which merits relief.[2] The matters raised personally by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), do not merit additional discussion or relief.[3]

---

[2] In the third assignment of error, appellant requests relief for dilatory post-trial processing. We find no due process violation in the processing of appellant's case. Reviewing the appropriateness of the sentence in light of the unjustified dilatory post-trial processing, we do not find relief is warranted. *See* UCMJ art. 66(c); *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) ("[Pursuant to Article 66(c), UCMJ, service courts are] required to determine what findings and sentence 'should be approved,' based on all the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay."); *see generally United States v. Toohey*, 63 M.J. 353, 362-63 (C.A.A.F. 2006); *United States v. Ney*, 68 M.J. 613, 617 (Army Ct. Crim. App. 2010); *United States v. Collazo*, 53 M.J. 721, 727 (Army Ct. Crim. App. 2000).

[3] Appellant's submission, like the first assigned error, argues that the evidence was factually and legally insufficient. Additionally, appellant personally argues that his counsel at trial was ineffective for not introducing several exhibits. Although labeled as submissions pursuant to *United States v. Grostefon*, appellant's submissions are more accurately described as a *pro se* appellate brief. *Compare United States v. Grostefon* (counsel shall submit all *issues* that appellant wants raised) *with Martinez v. Court of Appeals*, 528 U.S. 152, 163 (2000) (no right to self-representation on direct appeal from a criminal conviction); *see also McMeans v. Brigano*, 228 F.3d. 674, 684 (6th Cir. 2000) (a criminal appellant does not have "a constitutional entitlement to submit a *pro se* appellate brief on direct appeal in addition to the brief submitted by appointed counsel"); *United States v. Ogbonna,* 184 F.3d 447, 449 (5th Cir. 1999); *United States v. Gwiazdzinski*, 141 F.3d 784, 787 (7th Cir. 1998) (declining to accept the defendant's *pro se* brief on appeal from his federal conviction because a "defendant does not have an affirmative right to submit a *pro se* brief when represented by counsel").

Additionally, after the government filed a response, appellant filed both a reply brief and a *pro se* reply brief.

This court has often chosen not to distinguish between appellate counsel submitting "issues" on behalf of the appellant as required by *Grostefon* and the submission of *pro se* briefs by appellant. That is, while a close reading of *Grostefon* provides only for the submission of "issues" by *counsel*, we have often permitted the submission of substantive briefs *pro se*. There are several potential concerns: First,

(continued . . .)

## BACKGROUND

Prior to the beginning of the trial on the contested specifications, appellant pleaded guilty to a violation of Article 90, UCMJ, by disobeying an order from his company commander to have no contact with his wife, Mrs. CG.

Appellant's convictions under Article 128, UCMJ, all stem from allegations of severe child abuse occurring during the first month after his son KG was born. Evidence introduced at trial overwhelmingly showed that KG had suffered significant injuries, to include fractures to his skull, left femur, left tibia and multiple ribs. Bleeding within his skull resulted in the death of brain tissue and nearly resulted in KG's death. Finally, KG suffered from hemorrhages in all layers of his eyes that were "too numerous to count" and resulted in irreversible vision loss.

The government's case-in-chief included numerous expert witnesses in the medical field who described KG's injuries and offered opinions on the possible traumatic events that would be consistent with those injuries. The evidence introduced at trial easily established that KG's injuries were the result of abusive trauma. Additionally, the evidence established that the only two individuals–appellant and his wife, Mrs. CG–had the opportunity to cause the injuries to KG. Accordingly, the focus at trial, and again on appeal, was not *whether* KG had been abused, but instead whether the government had proven beyond a reasonable doubt *who* committed the abuse.

The government's case established the culpability of the accused through the testimony of Mrs. CG and by admitting appellant's pretrial statements. Mrs. CG did not directly witness any abuse but did testify to appellant's opportunity to injure KG. Appellant's statements were admitted through Mrs. CG, medical personnel, and through special agents from the Army Criminal Investigation Command (CID).

Mrs. CG testified that when they first discovered that KG was unresponsive and they were going to take him to the emergency room, appellant first did online research on mental retardation and told Mrs. CG that "I don't know if he's a quiet

---

(. . . continued)

the filing of *pro se* briefs (whether styled as *Grostefon* matters or not) may be an end-run around this court's rules such as page limits. *See* Army Court of Criminal Appeals Internal Rules of Practice and Procedure, R. 15.1(g). Second, when a *pro se* brief is filed out of time–as was the case here–our ability to control our docket and allow an effective government response is diminished.

However, in this case the government did not object to appellant's *pro se* filings. Accordingly, and as we find appellant's *pro se* arguments to be easily understood, we considered appellant's submissions in their entirety.

baby now, but he's acting retarded right now." After both parents took KG to the emergency room, appellant told Mrs. CG that "You know what this looks like, right? It looks like we played ping pong with our kid."

Appellant then told Mrs. CG that if asked, they should both "just say we were giving him a bath and that he banged his head accidentally on the faucet." Later, when interviewed by CID, appellant offered that KG had been injured by hitting his head on the faucet. When pressed, appellant also offered that he banged KG's car seat against the door when bringing him inside, that he later stepped on the car seat flipping it over, and that while giving KG a bath, his head slipped out of his hands and KG's head hit the side of the sink.

Ultimately, appellant stated that he was lying on the bed and was playing with KG by tossing him into the air. He stated that he failed to catch KG and that KG then bounced off the bed hitting the bedframe and wall. Appellant reconstructed this event with a doll in front of CID agents. KG was less than a month old during all relevant time periods.

While the government admitted all of appellant's statements, the government did not argue that any one of the statements was true.[4] Rather, the government offered expert medical testimony that none of appellant's explanations could account for all of KG's injuries. Appellant did not testify at his court-martial.

## LAW AND DISCUSSION

### A. Factual Sufficiency.

Article 66(c), UCMJ, requires a Courts of Criminal Appeals to conduct a de novo review of legal and factual sufficiency of the case. We may affirm a conviction only if we conclude, as a matter of factual sufficiency, that the evidence proves appellant's guilt beyond a reasonable doubt. *United States v. Sills*, 56 M.J. 239, 240-41 (2002); *United States v. Turner*, 25 M.J. 324, 324-25 (C.M.A. 1987). Such a review involves a fresh, impartial look at the evidence, giving no deference to the decision of the trial court on factual sufficiency beyond the admonition in Article 66(c), UCMJ, to take into account the fact that the trial court saw and heard the witnesses. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002).

---

[4] At trial, the government sought a conviction on the maiming specification, which requires as a specific intent the "intent to injure." UCMJ art. 124; *Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM*], pt. IV, ¶ 50.c.(3). While appellant's statements were evidence of negligent and culpably negligent conduct, none of appellant's statements included an admission of a specific intent to harm KG. The offenses for which appellant was convicted, and consistent with appellant's statement that he tossed his newborn son into the air, require only a culpably negligent mind. *MCM*, pt. IV, ¶ 54.c.(1)(b)(ii).

When conducting such a review, we are limited to the evidence admitted at trial. *United States v. Bethea*, 22 U.S.C.M.A. 223, 224-25, 46 C.M.R. 223, 224-25 (1973); *United States v. Beatty*, 64 M.J. 456, 458 (C.A.A.F. 2007).[5]

After giving appropriate deference to the court-martial's ability to "see and hear the witnesses" we find the evidence in this case to be factually sufficient in all but one aspect.[6] The specification of the additional charge alleged appellant committed an assault upon KG by "pushing an object and body part" into KG's mouth with unlawful force. In our review of the record, we find insufficient facts to support that a "body part" was forcibly inserted into KG's mouth and will provide relief in our decretal paragraph.

*B. Appropriateness of Sentence to Confinement.*

Appellant's second assignment of error alleges that his sentence to eleven years of confinement was inappropriately severe.

_____

[5] We note that the matters submitted by appellant pursuant to Rule for Court-Martial [hereinafter R.C.M.] 1105 included a letter to appellant that purported to be from Mrs. CG. In the letter, Mrs. CG all but admits that she caused KG's injuries. The authenticity of the letter is entirely unclear. Appellant does not raise this issue on appeal and has not filed a petition for a new trial based on new evidence. *See* UCMJ art. 73. Accordingly, we may not consider this letter when determining the factual sufficiency of the evidence. Finally, we note that appellant's reply brief includes a footnote that states appellant intends to file a petition for a new trial. As of the date of this opinion, that has not yet happened.

[6] As we stated in *United States v. Crews*, 2016 CCA LEXIS 127, *at 11-13 (Army Ct. Crim. App. 29 Feb. 2016):

> The deference given to the trial court's ability to see and hear the witnesses and evidence—or "recogni[tion]" as phrased in Article 66, UCMJ—reflects an appreciation that much is lost when the testimony of live witnesses is converted into the plain text of a trial transcript. While court-reporter notes may sometimes reflect a witness's gesture, laugh, or tearful response, they do not attempt to reflect the pauses, intonation, defensiveness, surprise, calm reflection, or deception that is often apparent to those present at the court-martial. A panel hears not only a witness's answer, but may also *observe* the witness as he or she responds. For instance, a transcript may state "I am showing the witness prosecution exhibit 13 for identification" but will leave unstated the witness's demeanor—whether surprise, recognition, or dread, when reviewing or confronted with evidence.

This court "may affirm only . . . the sentence or such part or amount of the sentence, as [we] find[] correct in law and fact and determine[], on the basis of the entire record, should be approved." UCMJ art. 66(c). "[T]he Courts of Criminal Appeals [have] not only . . . the power to determine whether a sentence is correct in law and fact, but also . . . the highly discretionary power to determine whether a sentence" should be approved. *United States v. Lacy*, 50 M.J. 286, 287, (C.A.A.F. 1999). While this court has "broad authority" under Article 66(c), UCMJ, to approve only that part of the sentence that "should be approved" this power is based on "legal—not equitable—standards . . . ." *United States v. Nerad*, 69 M.J. 138, 140 (C.A.A.F. 2010).[7]

At trial, the military judge prompted the defense to move for treating the two aggravated assault specifications as one for sentencing. The military judge then granted the motion.[8] Accordingly, the military judge correctly calculated that the maximum confinement was twelve years: five years for the combined aggravated assaults of a child, two years for assault consummated by battery of a child, and five years for disobeying a superior commissioned officer. On appeal, appellant argues that the eleven year term of confinement, broken down into its constituent parts, means that as a matter of arithmetic,[9] appellant was sentenced to four years of confinement for disobeying his company commander's order to have no contact with Mrs. CG. Appellant argues that a four year sentence for violating a no-contact order is inappropriately severe. We disagree with appellant's analysis for two related but independent reasons.

---

[7] Although *Nerad* involved consideration of a CCA's authority to determine whether a finding "should be approved" our superior court's analysis applies equally to determining whether a sentence "should be approved." *Id.;* UCMJ art. 66(c). Indeed, the authority for us to approve the findings and the sentence are conjoined in the same phrase in Article 66(c), UCMJ. Our cases have long distinguished between the convening authority's clemency powers (i.e. equitable) under Article 60, UCMJ, and this court's authority to reduce a sentence under Article 66, UCMJ. *See e.g.* UCMJ art. 60 (2012) (the convening authority may "in his sole discretion" disapprove, commute or suspend a sentence).

[8] In granting the defense's motion, the military judge found "as a matter of fact" that the two specifications of aggravated assault contained in Charge II "were from the same incident of misconduct." As the defense did not raise the issue of unreasonable multiplication of charges *for findings* (at trial or on appeal), we find that appellant forfeited this issue at trial and that any error did not amount to plain error.

[9] That is, appellant argues that even if appellant received the maximum possible confinement for the Article 128, UCMJ, violations (i.e. seven years out of a possible seven years) an eleven year sentence means appellant received a four-year sentence for the single violation of Article 90, UCMJ.

First, we disagree that when an accused has been convicted of several offenses, on appeal we should try to reconstruct how each offense was punished individually. Courts-martial impose unitary sentences. *United States v. Weymouth*, 43 M.J. 329, 336 (C.A.A.F. 1995) ("In the military . . . the 'unitary' sentence precludes concurrent sentencing."); *see United States v. Elliott*, 51 M.J. 334 (C.A.A.F. 1999) (summ. disp.); *see also* Rule for Courts-Martial R.C.M. 1006(c) (requiring proposed sentences to include "the complete sentence"); R.C.M. 810(a)(3) (requiring a single adjudged sentence in a rehearing); RCM 1002 ("Subject to the limitations in this Manual, the sentence to be adjudged is a matter within the discretion of the court-martial. . . ."); *but cf* R.C.M. 1003(c)(1)(C) ("*Multiplicity.* When the accused is found guilty of two or more offenses, the maximum authorized punishment may be imposed for each *separate* offense.") (emphasis added). Recently, the President has codified the requirement for unitary sentences. *See* Executive Order No. 13,730, 81 Fed. Reg. 33,331 (May 20, 2016) (amending R.C.M. 912(f)(1)(F) to require unitary sentencing). We do not believe it proper—or wise—to try to untangle from a unitary sentence what each part of a non-unitary sentence may have been and then determine whether each constituent part is "appropriate." Rather, our duty is a holistic one, to determine whether, on the basis of the entire record, the entire sentence is appropriate given both the offenses and the offender.

Second, we disagree with appellant's assertion that—in the context of this case—his Article 90, UCMJ, violation was "relatively insignificant as disobedience offenses go . . . . [and but for the other offenses] would have been handled via non-judicial punishment." Appellant's conduct took place while he was part of a rear detachment unit with minimal staffing. Appellant's commander testified during sentencing as follows:

> I would continually receive phone calls from [appellant's] spouse and his mother-in-law and emails from the two of them stating that he was still contacting the family. He was still - - he was just blatantly disregarding the no contact order. So I brought him in again, reiterated to him again and at that time once again he was just straight up, "I understand there's a no contact order, but I want to see my son and my family. I'm just going to do it anyway." I don't care." Right along  - - just those lines.

The company commander further testified that because he was the only officer in the company, and had very few noncommissioned officers to enforce discipline, "trying to enforce good order and discipline in the unit was extremely difficult. . . ."

Accordingly, given the severity of appellant's offenses, we find appellant's sentence to be appropriate.

## CONCLUSION

The court AFFIRMS only so much of the finding of guilty of the Specification of The Additional Charge as finds that:

> In that [appellant], U.S. Army, did, at or near Joint Base Lewis-McCord, Washington, between on or about 8 December 2012 and on or about 10 December 2012, commit an assault upon Master [KG], a child under the age of 16 years, by pushing an object into said Master [KG's] mouth with unlawful force causing a torn frenulum.

The remaining findings of guilty are also AFFIRMED.

We are able to reassess the sentence on the basis of the errors noted and do so after conducting a thorough analysis of the totality of the circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

In conducting a sentence reassessment, a Court of Criminal Appeals must "assure that the sentence is appropriate in relation to the affirmed findings of guilty, [and] that the sentence is no greater than that which would have been imposed if the prejudicial error had not been committed." *Sales,* 22 M.J. at 307-08 (quoting *United States v. Suzuki*, 20 M.J. 248, 249 (C.M.A. 1985)). "[I]f the court can determine to its satisfaction that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of the prejudicial effects of error. . . ." *Sales*, 22 M.J. at 308.

In evaluating the *Winckelmann* factors, despite dismissing a portion of the Specification of The Additional Charge, there is no dramatic change in the penalty landscape, as the maximum punishment faced by appellant remains the same. Second, appellant was tried and sentenced by a military judge sitting alone. As such, we are more likely to be certain of the sentence the military judge would have adjudged absent a finding of guilty as to the dismissed language and are convinced the military judge would have sentenced appellant to at least the sentence adjudged. Third, the gravamen of the criminal conduct within the original offenses remains substantially the same. Appellant remains convicted of disobeying a superior commissioned officer, two specifications of aggravated assault of a child, and one specification of assault consummated by battery of a child, all stemming from the same series of events that included the conduct underlying the language dismissed in the Specification of The Additional Charge. Thus, neither the penalty landscape nor

the vast majority of admissible aggravation evidence – including the overwhelming evidence of KG's severe and, in many ways, permanent injuries – has changed.

Reassessing the sentence based on the noted errors and the entire record, we AFFIRM the approved sentence of a bad-conduct discharge, confinement for eleven years, and reduction to the grade of E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside and dismissed by this decision are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge HAIGHT and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court